NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 231345-U

NO. 4-23-1345

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 11, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| SHERMAN M. WILLIS, | ) | No. 22CM31 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, holding (1) the evidence was sufficient to support
defendant's conviction for obstructing a peace officer and (2) defendant was not
denied his right to a fair trial when there was no jury instruction explaining the
State needed to prove defendant materially impeded a peace officer.

¶ 2    Defendant, Sherman M. Willis, appeals his conviction for obstructing a peace

officer (720 ILCS 5/31-1 (West 2022)). Defendant contends (1) the evidence at trial was

insufficient to prove him guilty beyond a reasonable doubt because it did not show his conduct

materially impeded an authorized act of a peace officer and (2) the lack of a jury instruction

explaining the State had the burden to prove beyond a reasonable doubt defendant materially

impeded the authorized act of a peace officer denied defendant his right to a fair trial. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4            On March 14, 2022, defendant was charged by information with one count of

obstructing a peace officer (*id.*). The information alleged, on or about February 26, 2022, defendant

> "knowingly resisted the performance of Daniel Carr of an
>
> authorized act within his official capacity, being the conducting of
>
> a traffic stop and/or detention of the defendant, knowing Daniel
>
> Carr to be a peace officer engaged in the execution of his duties, in
>
> that the defendant refused to exit his vehicle when so ordered by
>
> Daniel Carr."

A jury trial was held on April 25, 2023.

¶ 5                                     A. The State's Evidence

¶ 6                            1. *Corporal Daniel Carr's Testimony*

¶ 7           Corporal Daniel Carr of the Lincoln Police Department testified he was on duty as a patrol officer on February 26, 2022. At around 1 a.m., he spotted a black Nissan Altima driving in front of him cross the fog line on the road three times while speeding at 44 miles per hour in a 35-miles-per-hour zone. Corporal Carr pulled the vehicle over and identified the driver (defendant) and three passengers. When prompted for his driver's license and proof of insurance, defendant initially produced his state identification card and could not find his insurance card (though he did provide it later).

¶ 8           While speaking with defendant, Corporal Carr noticed a jar containing cannabis in the cupholder of defendant's vehicle and asked him "how much weed was in the car." Corporal Carr did not remember defendant's exact response but believed it was something along the lines of, "Why do you think there is that?" Corporal Carr replied he could smell the odor of cannabis in the car and he could see it in the cupholder. During cross-examination, Corporal Carr

indicated that when he asked defendant if the jar of cannabis was open, defendant responded it was.

¶ 9    After the exchange regarding the cannabis, Corporal Carr returned to his squad car and ran checks on the information of everyone in the vehicle. As Corporal Carr walked back to defendant's vehicle, two other officers arrived on scene. Corporal Carr then asked defendant to step out of his vehicle, explaining he had probable cause to search the vehicle based on the smell of cannabis and the container in the cupholder. However, according to Corporal Carr, defendant refused to get out of the car "ten, twenty, give or take" times. Defendant also rolled his window up, leaving a small gap so he could talk, and locked the vehicle. Corporal Carr told defendant "if he didn't get out, we would break the window and get him out of the vehicle." Despite numerous attempts, defendant did not get out of his vehicle and told Corporal Carr to break his window.

¶ 10    Corporal Carr then took his expandable baton (referred to as an "ASP") and broke defendant's vehicle's window and continued to order him to exit the vehicle. Defendant refused, and another officer on scene unlocked defendant's door, opened it, and pulled defendant from the vehicle. Defendant was handcuffed and placed under arrest for resisting and obstructing a police officer.

¶ 11    Corporal Carr's dash camera recorded the exchange. Portions of the dash camera video were admitted into evidence and played for the jury.

¶ 12    *2. Sergeant Shawn Petit's Testimony*

¶ 13    Sergeant Shawn Petit testified as follows. On February 26, 2022, Sergeant Petit joined Corporal Carr on a traffic stop. When Sergeant Petit arrived on the scene, Corporal Carr was at defendant's vehicle's window, speaking with him and urging him out of the vehicle.

During the exchange, Corporal Carr asked Sergeant Petit if he could break the window of defendant's vehicle. Sergeant Petit agreed it was fine because Corporal Carr had been ordering defendant out of the car for some time and defendant was not complying with his orders. After Corporal Carr broke the window, the officers removed defendant from the vehicle and placed him under arrest.

¶ 14                                    B. Defendant's Evidence

¶ 15        Defendant testified that on February 26, 2022, around 1 a.m., he was driving home to Lincoln, Illinois, after visiting a casino in Peoria, Illinois, when he was pulled over by Corporal Carr. His niece (who was pregnant at the time), the father of his niece's child, and a friend were passengers in his vehicle. Corporal Carr asked for defendant's license and proof of insurance, and eventually, he was able to provide a state identification card and insurance card. Defendant stated Corporal Carr asked him to exit the vehicle and, when he asked why, the officer stated he smelled the odor of cannabis. Defendant testified there was no odor of cannabis, but Corporal Carr told defendant he had "open Cannabis" and had the right to search the vehicle. Defendant then asked for a supervisor and told Corporal Carr he did not want to get out because it was cold outside and his pregnant niece was crying in the back seat. Defendant stated he was "trying to protect my family, so that's why I didn't get out of the vehicle because I told her, It's okay. We didn't do anything."

¶ 16        Defendant testified he repeatedly asked Corporal Carr why he had to get out of the vehicle and why he was being arrested. Defendant stated no one gave him a reason and Corporal Carr "still wouldn't tell me nothing," but he later testified Corporal Carr told him "he could to [*sic*] take me out of the vehicle at any time and that we had open cannabis." Defendant stated, "[T]he Cannabis was not open. I just thought it was open—because it wasn't my

- 4 -

Cannabis. It was my back passenger's seat Cannabis, so I thought it was open, but it wasn't. It was in a jar sealed. The officer couldn't even open the jar." Defendant testified he asked the officer to show him the jar was opened, and then the officer "offered to break [defendant's] window." Defendant explained: "I said if you break the window, it's on him. I never told him to break my window." Corporal Carr broke defendant's window. Defendant testified he continued to ask why he had to get out of the car (even when being taken out of the vehicle), but the officer would not tell him why. Defendant stated he had no intention of obstructing the officer in his investigation. He also stated he was not pulled out of the car but willingly got out.

¶ 17                                C. The Video Admitted at Trial

¶ 18          A video recording of the incident (State's exhibit A) was admitted into evidence and played for the jury. The video was recorded from Corporal Carr's dash camera. The video begins with Corporal Carr pulling defendant over and radio messaging other officers about the traffic stop. Corporal Carr gets out of his vehicle, approaches the driver's side window, and speaks with defendant. Corporal Carr tells defendant he stopped him because he was going "44 in a 35" and because he "crossed the fog line on three different occasions." Corporal Carr asks a series of questions, including whether defendant can present a valid license and insurance, where he is coming from, and how much cannabis is in the car. Defendant asks why Corporal Carr thinks there is cannabis in the car, and Corporal Carr responds, "It smells like it and I can see it." Corporal Carr then asks, "Have you opened that yet" (referring to what is later identified as a jar of cannabis in defendant's cupholder), and defendant responds that he has. Corporal Carr then asks for the identification cards of the passengers in the car. Around four minutes into the video, a second officer approaches the vehicle from the passenger side, and Corporal Carr indicates the passengers can hand their identification cards to him. Corporal Carr then asks if "there is any

weed in the car beside what [defendant] just showed me" and notes he was "not really concerned with it as long as it's not pounds." After Corporal Carr asks how much defendant has smoked tonight, defendant indicates he is trying to get home to smoke. Corporal Carr and the second officer return to Corporal Carr's patrol vehicle.

¶ 19        Around nine minutes into the video, Corporal Carr and the second officer approach defendant's vehicle again. Corporal Carr asks if defendant has found his proof of insurance yet, and defendant indicates he has a receipt. Corporal Carr then asks defendant to step out of the car, and when defendant asks why, Corporal Carr indicates it is because of the cannabis. Defendant responds that is "not probable cause," and Corporal Carr responds that it "absolutely is probable cause" while reaching to open defendant's car door, which is locked. Defendant indicates he does not consent to a search of his vehicle, and Corporal Carr responds that it is not an option while attempting to reach into defendant's driver's side window. Corporal Carr then asks if defendant wants his window broken and tells him he will break the window and remove defendant from the vehicle if he does not step out of the car. Defendant asks for a supervisor, and Corporal Carr responds that he is the supervisor. Defendant responds Corporal Carr does not have probable cause, and Corporal Carr responds he does because defendant indicated he had an open container of cannabis in the vehicle. Defendant argues it is legal, while Corporal Carr indicates it is not legal if it has been opened. Defendant then backtracks and indicates the container is not opened while Corporal Carr continues to tell defendant to get out of the vehicle.

¶ 20        Defendant and Corporal Carr continue to argue about the legality of the cannabis in the vehicle when a third officer approaches the vehicle from the passenger side. Around 12 minutes into the video, Corporal Carr reaches into the driver's side window of defendant's

vehicle before quickly pulling his hand out. Corporal Carr then indicates to defendant he is "about to shatter his window" and indicates defendant has "two seconds" before he does so. Defendant responds, "Shatter my window, that's on you." Corporal Carr asks the third officer, "You good?" before reaching for his expandable baton and breaking the driver's side window. After the window is broken defendant responds, "Wow you really shattered my window" and "I'll get out now, I just really wanted you to shatter my window." Corporal Carr and the second officer then open defendant's door, pull him out of the vehicle, and place him in handcuffs. The third officer grabs the jar of cannabis in question from defendant's vehicle and places it on the front of Corporal Carr's patrol car as defendant is given his *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)).

¶ 21                                      D. Jury Instructions

¶ 22          Following closing arguments, the trial court instructed the jury on, *inter alia*, the definition of obstructing a peace officer (see Illinois Pattern Jury Instructions, Criminal, No. 22.13 (approved May 4, 2018)) and the elements to be proven for the offense (see Illinois Pattern Jury Instructions, Criminal, No. 22.14 (approved May 4, 2018) (hereinafter IPI Criminal No. 22.14)). The definitional instruction read:

> "To sustain the charge of obstructing a peace officer, the
> State must prove the following propositions:
>
> *First Proposition*: That Daniel Carr was a peace officer;
> and
>
> *Second Proposition*: That the defendant knew Daniel Carr
> was a peace officer; and
>
> *Third Proposition*: That defendant knowingly obstructed

the performance by Daniel Carr of an authorized act within his official capacity.

> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 23                              E. Verdict and Sentence

¶ 24       On April 25, 2023, the jury reached a verdict, finding defendant guilty of obstructing a police officer. Defendant filed a motion for a new trial, which was denied by the trial court. On November 15, 2023, defendant was sentenced to 30 days in the county jail, to be served "either straight time or weekends," 24 months of probation, and $764 in fines and fees.

¶ 25       This appeal followed.

¶ 26                              II. ANALYSIS

¶ 27       On appeal, defendant argues no rational trier of fact could find the State proved he materially impeded Corporal Carr's authorized acts beyond a reasonable doubt because officer safety concerns were minimal, any impact of defendant's conduct on Corporal Carr's duties was minimal, and the length of the delay was *de minimis*. Defendant further argues he was denied his right to a fair trial when the jury was not instructed that to sustain a conviction for obstruction of a peace officer, the State had to prove beyond a reasonable doubt defendant's conduct materially impeded Corporal Carr's traffic stop or defendant's arrest.

¶ 28        A. Defendant Materially Impeded Corporal Carr's Authorized Acts

¶ 29        We first consider defendant's challenge to the sufficiency of the evidence that he materially impeded Corporal Carr's authorized acts.

¶ 30        When presented with a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Gotschall*, 2022 IL App (4th) 210256, ¶ 11. Here, the State charged defendant with obstruction of a peace officer, which is defined in section 31-1(a) of the Criminal Code of 2012 as follows: "A person who knowingly: (1) resists arrest, or (2) obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a)(1), (2) (2022). Obstruction of a peace officer can be a nonphysical act but must actually hinder or impede the officer's authorized act. *People v. Baskerville*, 2012 IL 111056, ¶¶ 19, 23. There is an implicit recognition that obstructive conduct is a material impediment. *People v. Mehta*, 2020 IL App (3d) 180020, ¶¶ 25-28.

¶ 31        Defendant does not contest that he knew Corporal Carr was a police officer or that Corporal Carr was engaged in an authorized act. Instead, defendant argues his actions did not materially impede Corporal Carr's official duties, and thus, he cannot be convicted for obstruction of a peace officer. After our review, we disagree.

¶ 32        In viewing the evidence in the light most favorable to the State, we find the evidence sufficient for a rational trier of fact to find defendant did commit the offense of obstruction of a peace officer beyond a reasonable doubt. This court has previously held that a defendant's continuous refusal to exit a vehicle upon the investigation of an offense is an

obstruction of a peace officer. See *People v. Synnott*, 349 Ill. App. 3d 223, 228 (2004). "The rule is based on considerations of officer safety. It seems clear that any behavior that actually threatens an officer's safety or even places an officer in fear for his or her safety is a significant impediment to the officer's performance of his or her duties." *Id.* Here, defendant was ordered out of his vehicle numerous times, with Corporal Carr citing the smell of cannabis and the container of cannabis defendant initially told him was opened—though defendant later clarified he only thought it was opened and then realized it was sealed—as probable cause for a search of his vehicle. Defendant did not comply with Corporal Carr's numerous orders despite being given a reason. Instead, defendant rolled up his window to prevent Corporal Carr from reaching into the vehicle and locked the doors to prevent Corporal Carr or the other officers from removing him from the vehicle. The entire interaction occurred around 1 a.m., with defendant's car full of passengers. Defendant was warned the officers would break his vehicle's window if he did not comply. Defendant's repeated refusal to get out of his vehicle presented officer safety concerns and significantly hindered Corporal Carr's ability to perform his duties.

¶ 33        We find unpersuasive defendant's argument that a *de minimis* exception applies in this case. A *de minimis* exception and an implicit component of materiality are two sides of the same coin. *Mehta*, 2020 IL App (3d) 180020, ¶ 18. While an act might hinder or impede an official act in the technical sense, that impediment may be so minimal as to not be considered a violation of the statute in question. *Id.* ¶ 21. However, in this case, the impediment defendant caused was not *de minimis*. Defendant's actions did not merely delay Corporal Carr from performing his official duties or create some small impact that still would have allowed Corporal Carr to continue his investigation. See *People v. Taylor*, 2012 IL App (2d) 110222, ¶ 3 (where the court found the defendant did not materially impede an officer's investigation by initially

giving him a false name because the false name the defendant provided merely delayed the officer's investigation and the officer was able to continue his investigation). Instead, defendant completely blocked Corporal Carr from continuing his investigation in any meaningful way. Defendant stayed in his vehicle when ordered out, rolled up his windows, and locked the doors to keep Corporal Carr from reaching him or getting into the vehicle. Defendant's intentional actions by repeatedly refusing to comply with Corporal Carr's orders were more than a *de minimis* impediment to the officer's investigation; they were significant impediments. We therefore find the evidence sufficient for a rational trier of fact to find defendant committed the offense of obstruction of a peace officer beyond a reasonable doubt.

¶ 34                              B. Defendant Was Not Denied His Right to a Fair Trial

¶ 35             Defendant further argues he was denied his right to a fair trial when the jury was not instructed that the State had to prove he *materially* obstructed Corporal Carr in his official duties. Defendant forfeited this claim because he did not object to the instructions or tender an alternative in the trial court. On appeal, parties may not challenge the failure to give a jury instruction unless the party had tendered it. Ill. S. Ct. R. 366(b)(2)(i) (eff. Feb. 1, 1994). However, "substantial defects [in jury instructions] are not waived by failure to make timely objections thereto if the interests of justice require." Ill. S. Ct. R. 451(c) (eff. Apr. 8, 2013). The rule is coextensive with the plain-error rule in Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967). The plain-error doctrine allows a reviewing court to consider a forfeited error affecting substantial rights in two circumstances:

> "(1) when a clear and obvious error occurred and the evidence is so
> closely balanced that the error alone threatened to tip the scales of
> justice against the defendant, regardless of the seriousness of the

error, or (2) when a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Moon*, 2022 IL 125959, ¶ 20.

¶ 36 The first step in any plain-error analysis is to determine whether a clear or obvious error occurred at trial. *People v. Sebby*, 2017 IL 119445, ¶ 49. Here, the trial court gave unmodified Illinois Pattern Jury Instructions on the charge of obstructing a peace officer. Generally, a trial court may only deviate from the pattern instruction and format "where necessary to conform to unusual facts or new law." (Internal quotation marks omitted.) *People v. Anderson*, 2012 IL App (1st) 103288, ¶ 40. Defendant's case did not involve any unusual facts or new law, and thus, the pattern instructions the court gave on obstructing a peace officer sufficiently instructed the jury on the law.

¶ 37 A similar argument was considered in *People v. McAndrew*, 2024 IL App (1st) 230881. In *McAndrew*, the defendant argued that IPI Criminal No. 22.14 did not accurately state the law in the offense of obstruction of a peace officer because it failed "to inform the jury that the obstructive act must materially impede the officer in the performance of his authorized duties." *Id.* ¶ 43. The appellate court rejected the defendant's argument, noting "no modifications to IPI Criminal [No.] 22.14 were necessary." *Id.* The *McAndrew* court predicated its ruling on persuasive authority in *People v. Osman*, 2024 IL App (2d) 230149-U, ¶ 28, which held that where the jury is made aware of a defendant's obstructive conduct, through detailed evidence and arguments at trial, no modifications of IPI Criminal No. 22.14 are necessary to inform it of an implicit materiality component in a charge of obstruction of a peace officer. Here, the jury was made aware of the details of defendant's obstructive conduct through evidence and

arguments at trial. The jury instructions accurately conveyed the law and required no modifications, and thus, the trial court committed no error in giving the jury the original instruction.

¶ 38                                III. CONCLUSION

¶ 39          For the reasons stated, we affirm the trial court's judgment.

¶ 40          Affirmed.