2025 IL App (4th) 231312
NO. 4-23-1312

FILED
April 15, 2025
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| ASWAD J. COATES, | ) | No. 22CM164 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court, with opinion.
Justices Steigmann and Grischow concurred in the judgment and opinion.

**OPINION**

¶ 1        Following a jury trial, defendant, Aswad J. Coates, was found guilty of two counts of obstructing a peace officer. On appeal, defendant presents two arguments. First, defendant contends the evidence was insufficient to prove he caused a material impediment to a peace officer's authorized duties with respect to each offense and therefore his convictions should be reversed. Alternatively, defendant argues this court should reverse and remand for a new trial because the jury was not properly instructed on an essential element of obstructing a peace officer. We affirm.

¶ 2                                I. BACKGROUND

¶ 3        On October 4, 2022, the State charged defendant by information with three counts of obstructing a peace officer (720 ILCS 5/31-1 (West 2022)) (counts I through III), resisting a

peace officer (*id.*) (count IV), and driving while unlicensed (625 ILCS 5/6-101(a) (West 2022)) (count V). As relevant to the claims presented on appeal, count I alleged defendant obstructed a peace officer when he refused to provide his identification, and count II alleged defendant obstructed a peace officer when he refused to exit his vehicle.

¶ 4        The trial court conducted a jury trial on April 27, 2023. At the outset, the State indicated it would not be proceeding on count V, which charged defendant with driving while unlicensed. A summary of the proceedings in the trial court follows.

¶ 5                              A. The State's Case-in-Chief

¶ 6        The State first presented the testimony of Corporal Collin Antoine.

¶ 7        Corporal Collin Antoine testified he has been employed with the Lincoln Police Department since 2021. On September 13, 2022, Corporal Antoine was on duty at approximately 10:15 p.m. As part of his duties, Corporal Antoine patrolled Lincoln to enforce traffic and other laws. This included initiating traffic stops wherein he may ask individuals for identification and to exit their vehicle. On that date, Corporal Antoine was driving a marked police vehicle and wearing a police uniform, which included a badge, patch, and other equipment.

¶ 8        While patrolling on that date, Corporal Antoine observed a Dodge Charger traveling northbound on Union Street in Lincoln at 35 miles per hour in a 30 mile-per-hour zone and approaching Lincoln Parkway. After the Charger turned westbound (left) onto Lincoln Parkway, Corporal Antoine activated the lights on his patrol vehicle and initiated a traffic stop. Corporal Antoine approached the passenger side of the Charger, where a woman was seated beside a male driver, whom he later identified as defendant. Corporal Antoine explained to the occupants of the Charger that he stopped the car for speeding, which defendant denied. Corporal Antoine indicated to defendant that speeding was a traffic violation justifying a traffic stop and asked

- 2 -

defendant for identification. According to Corporal Antoine, defendant "debated" with him whether the stop was justified and initially refused to provide his identification and insurance information. Corporal Antoine called for backup and ordered defendant to exit the Charger. After multiple requests to exit, one of the officers who had been called as backup—Officer Christopher Phillips—opened the driver's side door and physically removed defendant. At this point, Corporal Antoine indicated to defendant he was under arrest for obstruction, and he was placed in handcuffs. Corporal Antoine searched defendant's person and located defendant's identification in his wallet. The trial court then allowed the admission of People's exhibit A, which Corporal Antoine indicated was a disc containing video footage of the traffic stop obtained from his patrol car's dashboard camera.

¶ 9        The video footage was substantially consistent with Corporal Antoine's testimony of the stop. The stop occurs at night and on a divided highway. Defendant pulls his vehicle to the shoulder of the parkway, but a portion of the vehicle remains in the right traffic lane. In the video, defendant cites a California case from 1975, which he claims supports his assertion that speeding was not a crime justifying a traffic stop. About one minute into the stop, defendant indicates he is a "sovereign citizen" exercising his "freedom of travel," to which Corporal Antoine responds, "Alright," before using his radio to call for backup. While waiting for backup to arrive, defendant and Corporal Antoine continue to debate the legality of the stop, with defendant indicating, "I'm not trying to give you a hard time." Also during this time, Corporal Antoine can be seen looking into the back seat of the Charger. When defendant asks why Corporal Antoine is doing so, he responds, "Because police officers get shot." Defendant responds, "*I* feel threatened." When asked why, defendant states, "Because I don't know you for one. *** I don't know you, you got a gun, you got a flashlight. *** I'm in the middle of nowhere." Shortly thereafter, the backup officers

arrive, which was about three minutes after being called. Three officers can be seen approaching the driver's side door when the following exchange occurred:

"ANTOINE: Okay, here's what's gonna happen. Exit the vehicle.

DEFENDANT: For what?

ANTOINE: Because I'm telling you to.

DEFENDANT: But for what?

ANTOINE: Exit the vehicle, or you're gonna go to jail.

DEFENDANT: For what reason? What crime am—

ANTOINE: Because I'm telling you to.

DEFENDANT: You haven't explicated any—can you articulate—

ANTOINE: I have. I'm not gonna debate with you all night over it.

DEFENDANT: Can you articulate a crime.

ANTOINE: Yes.

DEFENDANT: Can you articulate a crime.

ANTOINE: Okay. Whether or not you believe traffic—

DEFENDANT:—your suspicions of a crime that I committed.

ANTOINE: Obstructing. Obstructing.

DEFENDANT: What crime have I obstructed?

ANTOINE: Obstructing.

DEFENDANT: What is that? Can you articulate—

[ANOTHER OFFICER]: Get out."

At this point, two officers can be seen physically removing defendant from the vehicle. After being removed, defendant falls to the ground and is picked up a few seconds later by officers, who place

him in handcuffs.

¶ 10        Following the arrest, officers searched the Charger and found no contraband. The woman in the front seat, who defendant told officers was his wife and the owner of the Charger, was permitted to leave. She was further advised she could pick up defendant at the county jail. Toward the end of the video, Corporal Antoine informs defendant his initial plan was to "make contact" and provide a "written warning" for the traffic violation and that there is caselaw stating officers can ask drivers for identification during a traffic stop. Finally, Corporal Antoine tells defendant, "There's no hard feelings, man. *** I'm not going to give you any tickets for speeding, or the lane violation, or any of that. You're gonna get one citation, for not having a license. And then you're going to get obstructing, because *** you made me work."

¶ 11        The State also presented testimony from Officer Phillips, who testified he was one of the three officers Corporal Antoine called for backup that evening. Officer Phillips testified that, after approaching the driver's side of the Charger during the stop, he reached in through the window and unlocked the door before pulling defendant out of his seat. According to Officer Phillips, after he pulled defendant out of the Charger, defendant "[k]ind of went *** limp, and he just fell to the side of the car."

¶ 12        Following Officer Phillips's testimony, the State rested.

¶ 13                            B. Defendant's Case

¶ 14        Defendant elected to testify on his own behalf. Defendant explained he went limp and fell after being pulled from the Charger because he had a form of neuropathy caused by Charcot-Marie-Tooth syndrome and because he was surprised due to being grabbed from behind. Defendant emphasized that he was scared at night and of encountering the police, as he had had friends killed by police in the past, and that he "wasn't trying to hurt no [o]fficer." Defendant

further testified, "I had my I.D. sitting on my lap. When I asked the [o]fficer if he can give me a reasonable—articulate a reasonable suspicion, I'll show you. I want to know what's going on."

¶ 15    The defense then rested, and the State did not present evidence in rebuttal.

¶ 16                    C. Verdict and Posttrial Proceedings

¶ 17    With the jury out of the room, the parties discussed the jury instructions. Defendant's counsel stated he had no objection to the State's proposed issues instruction, which tracked the language of the relevant pattern jury instruction and provided as follows:

"To sustain the charge of resisting or obstructing a peace officer, the State must prove the following propositions:

First Proposition: That Collin Antoine was a peace officer; and

Second Proposition: That the defendant knew Collin Antoine was a peace officer; and

Third Proposition: That the defendant knowingly resisted or obstructed the performance by Collin Antoine of an authorized act within his official capacity.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 18    During closing arguments, the State emphasized defendant's noncompliance with Corporal Antoine's directions to provide his identification and later to exit the Charger. Defense counsel argued defendant's fear rendered him incapable of intentionally obstructing or resisting

during the traffic stop.

¶ 19        Following its deliberations, the jury found defendant guilty of two counts of obstruction: one based on failing to provide his identification and one for not exiting his vehicle. The jury found defendant not guilty of the two charges based on falling to the ground when he was pulled from the vehicle.

¶ 20        Five days after the trial, defendant's trial counsel filed a timely motion for a new trial. Two months later, while the motion remained pending, trial counsel died and was replaced. Defendant's new counsel filed an amended motion for a new trial, arguing the evidence was insufficient to convict defendant of obstruction beyond a reasonable doubt. Specifically, the motion asserted that to convict defendant, the State was required to prove defendant had "materially impeded" Corporal Antoine in the performance of his official duties. Accordingly, the argument continued, the State's evidence was insufficient to prove this materiality component. In the alternative, defendant argued that the trial court's failure to instruct the jury on an essential element of the offense—*i.e.*, the aforementioned "materially impeded" element—was reversible structural error and defendant's trial counsel had been ineffective for allowing the jury to be so instructed.

¶ 21        Following a hearing, the trial court denied defendant's amended motion. Although the court agreed that materiality was an element of the offense, the court found defendant's "repeated refusal to get out of [the] car" "heighten[ed] the concerns for officer[s'] safety," and therefore "it was not an error on the instructions that were given in this case."

¶ 22        The trial court sentenced defendant to a 12-month term of probation, to include 100 hours of community service work.

¶ 23        This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25        On appeal, defendant argues this court should reverse his convictions because the evidence was insufficient to convict him of obstructing a peace officer beyond a reasonable doubt. Alternatively, defendant contends the trial court failed to properly instruct the jury on an essential element of the offense of obstructing a peace officer and therefore this court should remand for a new trial. The State responds the jury was properly instructed and the evidence was sufficient to convict defendant. We affirm.

¶ 26                           A. Sufficiency of the Evidence

¶ 27        We first address defendant's argument the evidence was insufficient to convict him of obstructing a peace officer.

¶ 28                               1. *Applicable Law*

¶ 29        It is well settled that, to conform with the constitutional principle of due process, an individual may not be convicted of a crime unless the State has proven each essential element of the offense beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Instead, "we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendant committed the essential elements of the crime beyond a reasonable doubt." *People v. Sadder-Bey*, 2023 IL App (1st) 190027, ¶ 25.

¶ 30        At the time defendant was charged in this case, section 31-1(a) of the Criminal Code of 2012 (720 ILCS 5/31-1(a) (West 2022)) provided as follows: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity

commits a Class A misdemeanor." Stated another way, "the State must prove that the defendant *** obstructed someone he knew was a peace officer and that this obstruction *** actually impeded or hindered the officer from conducting an act that he or she was authorized to perform." *Sadder-Bey*, 2023 IL App (1st) 190027, ¶ 26. It is well settled that the statute does not "proscribe mere argument with a policeman about the validity of an arrest or other police action" but instead contemplates conduct "which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties." *People v. Raby*, 40 Ill. 2d 392, 399 (1968). Such an impediment or hindrance must be material and beyond merely technical or *de minimis*. *People v. Mehta*, 2020 IL App (3d) 180020, ¶ 26. Several factors to consider when determining whether an individual's alleged obstructing act constituted a material hindrance of an officer's authorized acts include the following: (1) the length of the delay caused by the act, which is a "primary factor"; (2) whether the officers initiating the traffic stop were familiar with the defendant; and (3) whether the act tends to pose a risk to officer safety. *Id.* ¶¶ 32-34. The inquiry into materiality is fact-intensive, and "obstructive acts that may not create a material impediment in one set of circumstances may nevertheless create such an impediment in other circumstances." *Id.* ¶ 33.

¶ 31            Additionally, Illinois courts have consistently held that any refusal to act or small delay that poses a risk to officer safety constitutes a material impediment sufficient to sustain a conviction for obstructing a peace officer. See *People v. Synnott*, 349 Ill. App. 3d 223, 228 (2004); *Mehta*, 2020 IL App (3d) 180020, ¶ 35. These cases also typically involve circumstances surrounding the stop that are inherently "fraught" with risk or danger, where even a *de minimis* delay is sufficient to support the conviction due to an actual risk to officer safety. See *Mehta*, 2020 IL App (3d) 180020, ¶¶ 34-35; *Synnott*, 349 Ill. App. 3d at 228.

¶ 32            Both defendant and the State cite several cases in support of their respective

positions, including *Sadder-Bey* and *Mehta*. Defendant claims *Sadder-Bey* is dispositive while *Mehta* is distinguishable, and the State argues *Sadder-Bey* was incorrectly decided while *Mehta* is instructive. We discuss each case in turn.

¶ 33    In *Sadder-Bey*, around 1 p.m., a police officer initiated a traffic stop after the officer observed a car cross over the center line of a road. *Sadder-Bey*, 2023 IL App (1st) 190027, ¶ 5. In response to a request for identification, the defendant driver stated the police lacked " 'jurisdiction' " over him because he was a " 'sovereign citizen' " who was merely " 'traveling.' " *Id.* ¶¶ 5-7. "After about 45 seconds of relatively polite but forceful disagreement," an officer ordered the defendant to exit his vehicle. *Id.* ¶ 1. Instead of exiting, the defendant continued to ask the officer why he needed to get out of the car. *Id.* ¶¶ 10-14. After the officer drew his Taser, the defendant raised the driver's side window, which had been partially open, before rolling it back down fully. *Id.* ¶ 14. About two minutes after the officer asked for the defendant's identification, he informed the defendant his choices were to comply or be physically removed from the vehicle. The defendant "slowly rose out of the car" and was placed in handcuffs without incident. *Id.* ¶ 16. On appeal from his conviction for resisting a peace officer, the First District held that "arguing with an officer does not, standing on its own, violate the law." *Id.* ¶ 41. Although the First District agreed the defendant had been "obstinate and argumentative," it ultimately concluded he had not "materially oppose[d] [the arresting officer's] efforts to remove him from the car to investigate if he had a valid license or car insurance." *Id.* ¶ 52. Accordingly, the First District concluded the evidence was insufficient to prove the defendant guilty of resisting a peace officer and reversed his conviction. *Id.* ¶¶ 52-55.

¶ 34    In *Mehta*, two officers were dispatched to a parking lot to investigate a report of a man threatening another individual with a handgun. *Mehta*, 2020 IL App (3d) 180020, ¶ 4. When

the two officers arrived, other officers were already present and directed them to stop an SUV that had passed them as they entered the parking lot. *Id.* After stopping the SUV, the driver and the defendant passenger exited the vehicle. *Id.* ¶¶ 5-6. However, the defendant did not heed the officers' multiple orders to turn around and walk backwards toward them. *Id.* ¶ 6. The defendant eventually walked "forward to the officers," and the officers took him into custody. *Id.* The arresting officer testified the interaction took place in an area known for "gang activity" and ultimately lasted about three minutes. *Id.* ¶¶ 7-8, 11. Another officer testified the traffic stop was a " 'very high stress situation,' " the defendant's refusal to turn around was a threat to officer safety, and the defendant's conduct interfered with the officers' ability to investigate whether there was anyone else in the vehicle or a gun in the vicinity. *Id.* ¶ 11. On appeal from his conviction for obstructing a peace officer, the Third District held the evidence was sufficient to convict the defendant. *Id.* ¶ 35. While the court acknowledged the delay caused by the defendant's refusal to turn around was "relatively small" and lasted only three minutes, "that refusal occurred in a high-tension situation for the police," "at night in an area known for gang activity, on suspicion that the occupants were in possession of a firearm." *Id.* The court concluded this small act "exacerbated" already-elevated officer safety concerns and it reiterated the principle that " 'any behavior that actually threatens an officer's safety or even places an officer in fear for his or her safety is a significant impediment to the officer's performance of his or her duties.' " *Mehta*, 2020 IL App (3d) 180020, ¶ 35 (quoting *Synnott*, 349 Ill. App. 3d at 228).

¶ 35                                    2. *This Case*

¶ 36        Defendant claims the evidence was insufficient to convict him of both counts of obstructing a peace officer. We address each claim separately.

¶ 37                          a. Refusal to Provide Identification

¶ 38 We first address whether the evidence was sufficient to convict defendant of count I, which alleged defendant obstructed a peace officer when he refused to provide his identification.

¶ 39 Defendant claims this case is akin to *Sadder-Bey* and compels the same result. We acknowledge there are several similarities here, such as the relatively brief nature of the interaction resulting in the arrest, the references to "sovereign citizens," and the presence of passionate but primarily polite debate. See *Sadder-Bey*, 2023 IL App (1st) 190027, ¶¶ 27-29. However, the First District specifically based its analysis on whether the defendant's behavior constituted an act of "resistance," which it defined as " 'withstanding the force or effect of' or the 'exertion of oneself to counteract or defeat.' " *Id.* ¶ 30 (quoting *Raby*, 40 Ill. 2d at 399). The First District emphasized this analysis differed from the issue of "obstructing," stating, "Critically, the State only charged defendant with resisting, *not* obstructing. At trial and now on appeal, the State insists that [the] defendant did not obstruct [the officer] but rather resisted him. So we will limit our review to only acts of 'resistance' that could sustain the conviction." (Emphasis in original.) *Id.* ¶ 29. (We note that effective January 1, 2023, the statute was amended to distinguish between two different types of conduct giving rise to the offense: the act of "resist[ing] arrest" (720 ILCS 5/31-1(a)(1) (West 2022)) *or* "obstruct[ing]" a peace officer in the performance of his official duties (*id.* § 31-1(a)(2)).) Here, defendant was charged separately with both obstructing (counts I through III) and resisting a peace officer (count IV) under the earlier version of the statute and was found not guilty of the resisting charge. Consequently, while our analysis may be similar to that of the court in *Sadder-Bey*, it is ultimately different in nature based on the charging instruments. See *People v. Baskerville*, 2012 IL 111056, ¶ 25 (distinguishing resisting versus obstructing). Accordingly, we need not address the State's argument the case was incorrectly decided.

¶ 40 Additionally, and contrary to the State's assertions on appeal, we also conclude the

circumstances presented by defendant's alleged refusal to provide identification are distinguishable from *Mehta*. Specifically, this case lacks the dangerous circumstances presented in that case. In *Mehta*, the defendant had been stopped in a parking lot where police had received a report of an individual threatening someone with a handgun. *Mehta*, 2020 IL App (3d) 180020, ¶ 4. It also occurred in an area known for criminal or gang activity, where many officers were already present. *Id.* ¶¶ 7-8, 11. In contrast to this case, similar concerns of officer safety were not present here. Despite Corporal Antoine's statement in the video that "officers get shot," there was no evidence suggesting this was a situation inherently fraught with danger. There was no evidence defendant was stopped on suspicion of more than a minor traffic violation. There were no reports of violence that precipitated the stop, and no witness testified there was reason to believe defendant possessed a weapon or firearm. There was no testimony this was a high crime area known for gang or other criminal activity. Accordingly, defendant's alleged refusal to provide identification does not fall into the line of cases where the circumstances surrounding the stop are inherently "fraught" with risk or danger and where even a *de minimis* delay is sufficient to support the conviction due to an actual risk of officer safety. See *id.* ¶¶ 34-35; see also *Synnott*, 349 Ill. App. 3d at 228.

¶ 41            Accordingly, we must analyze defendant's refusal to provide his identification under the framework of whether his alleged obstructing act constituted a material hindrance of an officer's authorized acts. *Mehta*, 2020 IL App (3d) 180020, ¶ 26. As noted above, when evaluating whether an act constitutes a material hindrance, this court will consider the following factors: (1) the length of the delay caused by the act, which is a "primary factor"; (2) whether the officers initiating the traffic stop were familiar with the defendant; and (3) whether the act tends to pose a risk to officer safety. *Id.* ¶¶ 32-34. The inquiry into materiality is fact-intensive, and "obstructive acts that may not create a material impediment in one set of circumstances may nevertheless create

such an impediment in other circumstances." *Id.* ¶ 33.

¶ 42 Ultimately, we conclude defendant materially hindered Corporal Antoine in conducting a routine traffic stop when he failed to provide his identification as alleged in count I. It is clear from the record that Corporal Antoine and defendant did not know each other. Additionally, defendant acknowledges he spent about five minutes arguing with Corporal Antoine regarding whether he was required to produce his identification. During this time, Corporal Antoine attempted to explain multiple times he was authorized to request identification during a traffic stop and that speeding was sufficient grounds to conduct such a stop. While defendant remained polite and reasonably respectful during this debate, he became increasingly agitated when he accused the officer of looking around or searching his car. The fact Corporal Antoine called for backup as soon as defendant indicated he was a "sovereign citizen" supports an inference he did not believe there was *any* explanation or authority he could have provided that would have satisfied defendant and that would have resulted in compliance with the request for his identification. Further, defendant continued to cite irrelevant portions of the Uniform Commercial Code, brought up differences between common law and "codes," and erroneously asserted he had a "right," rather than a "privilege," to operate a vehicle on public roads. Although defendant never outright stated he would not produce his identification under any circumstances, he never actually complied. In fact, Corporal Antoine was only able to obtain defendant's identification from his wallet after defendant was forcibly removed from the vehicle. The stop occurred at night, on the parkway, and while defendant's vehicle was not entirely out of the traffic lane. Although five or six minutes is not an extensive delay in general, a reasonable juror could conclude, under these circumstances, it was more than *de minimis* in the context of a traffic stop that is intended to be a relatively brief encounter. See *People v. Timmsen*, 2016 IL 118181, ¶ 9 ("[A] routine traffic stop

- 14 -

is a relatively brief encounter similar to a *Terry* stop rather than to a formal arrest."); *Terry v. Ohio*, 392 U.S. 1 (1968). (As we have discussed previously, we are not suggesting by noting these facts that this was an inherently dangerous situation from its inception; however, we would be remiss if we did not acknowledge a continued delay of a traffic stop does have some general safety concerns the longer the parties and the vehicles are on the parkway.) While a mere argument with a police officer is not sufficient to sustain a conviction for obstructing, a reasonable juror could conclude that defendant's commitment to an ongoing debate with Corporal Antoine constituted a material delay in his authorized attempt to identify him as required during a routine traffic stop. Accordingly, we affirm defendant's conviction for obstructing a peace officer as alleged in count I.

¶ 43                                  b. Refusal to Exit the Vehicle

¶ 44            We next consider whether the evidence was sufficient to convict defendant for obstructing a peace officer based on his refusal to exit his vehicle as alleged in count II.

¶ 45            Here, the evidence was sufficient to convict defendant for obstructing a peace officer based on his alleged refusal to exit the vehicle because it presented a risk to officer safety. It is well settled that, following a lawful traffic stop, the police may, as a matter of course, order the driver to exit the vehicle pending the completion of the stop without impinging upon the driver's fourth amendment (U.S. Const., amend. IV) rights. See *Synnott*, 349 Ill. App. 3d at 228; see also *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). The primary rationale for this rule is the concern for officer safety: it allows an officer to better observe the movements of the stopped person and permits the encounter to occur away from traffic hazards. *Mimms*, 434 U.S. at 111. Here, the video evidence showed defendant was ordered to exit his vehicle at least three times. Defendant was told that if he did not exit, he would go to jail. Despite these repeated orders,

defendant continued to question why he was being asked to exit and demanded the police provide an explanation, leading the officers to forcefully remove him. Although defendant emphasizes Corporal Antoine's comment that defendant was arrested because he made him "work," the comment clearly refers to his view that defendant continuously and repeatedly impeded and delayed him in carrying out the traffic stop. While defendant's refusal to exit the vehicle occasioned only a minimal delay in this case, Illinois courts have consistently held that any refusal to act that poses a risk to officer safety constitutes a material impediment sufficient to sustain a conviction for obstructing a peace officer. See *Synnott*, 349 Ill. App. 3d at 228; *Mehta*, 2020 IL App (3d) 180020, ¶ 35. Accordingly, we affirm defendant's conviction for obstructing a peace officer as alleged in count II.

¶ 46                                    B. Jury Instructions

¶ 47        We next turn to defendant's claim this case should be reversed and remanded for a new trial because the trial court failed to properly instruct the jury by omitting an essential element of the offense of obstructing a peace officer. Specifically, defendant argues the jury was not instructed that the State was required to prove defendant "materially" impeded an officer, and defendant contends the failure to include this essential element of the offense deprived him of a fair trial.

¶ 48        Acknowledging he failed to preserve this argument in the trial court, defendant claims this court should nonetheless excuse his forfeiture under the plain error doctrine. In the further alternative, defendant claims trial counsel's failure to request the proper instruction constituted ineffective assistance of counsel. The State responds the jury was properly instructed on all essential elements of the offense and therefore no error or ineffective assistance of counsel occurred. Alternatively, the State contends that if this court concludes the instructions were

insufficient, such error was harmless. We conclude no error occurred.

¶ 49        Generally, a party forfeits any alleged error concerning jury instructions if he fails to object to the instruction or offer an alternative. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). However, under Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013), "substantial defects [in jury instructions in criminal cases] are not waived by failure to make timely objections thereto if the interests of justice require." In *People v. Hopp*, 209 Ill. 2d 1, 7 (2004), our supreme court explained, "Rule 451(c)'s exception to the waiver rule for substantial defects applies when there is a grave error or when the case is so factually close that fundamental fairness requires that the jury be properly instructed." Furthermore, "Rule 451(c) is coextensive with the plain-error clause of [Illinois] Supreme Court Rule 615(a) [(eff. Jan. 1, 1967)], and the two rules are construed identically." *Piatkowski*, 225 Ill. 2d 551, 564 (2007); see Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). The first step in this analysis is to determine whether any error occurred.

¶ 50        Under the United States and Illinois Constitutions, a defendant's right to a fair trial includes providing proper instructions to the jury. See U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 2, 8; see also *Beck v. Alabama*, 447 U.S. 625, 635-36 (1980); *People v. DiVincenzo*, 183 Ill. 2d 239, 249 (1998). Generally, "certain instructions, such as the burden of proof and elements of the offense, are essential to a fair trial," and "the failure to give such instructions constitutes grave error when, viewing the record as a whole, it appears that the jury was not apprised of the [State's] burden of proof." *People v. Reddick*, 123 Ill. 2d 184, 198 (1988). Accordingly, defendant must show that the alleged instructional error "create[d] a serious risk that the jurors incorrectly convicted [him] because they did not understand the applicable law, so as to

severely threaten the fairness of the trial." *Hopp*, 209 Ill. 2d at 8.

¶ 51    Here, we conclude no instructional error occurred. As noted above, the trial court's instructions provided as follows:

> "To sustain the charge of resisting or obstructing a peace officer, the State must prove the following propositions:
>
> First Proposition: That Collin Antoine was a peace officer; and
>
> Second Proposition: That the defendant knew Collin Antoine was a peace officer; and
>
> Third Proposition: That the defendant knowingly resisted or obstructed the performance by Collin Antoine of an authorized act within his official capacity.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

Although we agree with defendant that the State was required to show defendant's conduct constituted a "material" impediment to the performance of Corporal Antoine's duties, we disagree that materiality is a *unique* element of the offense requiring a separate instruction. Instead, we agree with the State the requirement of materiality is merely definitional; it is based on Illinois courts' statutory interpretation of the meaning of the word "obstruct." See *Mehta*, 2020 IL App (3d) 180020, ¶ 23 (noting the obstructing a peace officer statute is silent on the definition of obstructing and therefore the materiality requirement is derived from the dictionary definition).

We therefore find the court's instructions to the jury were sufficient to apprise them of the State's burden of proof and all essential elements of the offense. See *People v. McAndrew*, 2024 IL App (1st) 230881, ¶ 43 (concluding Illinois Pattern Jury Instructions, Criminal, No. 22.14 (4th ed. 2000) accurately stated required elements of obstructing a peace officer); *People v. Osman*, 2024 IL App (2d) 230149-U, ¶ 28 (same). Accordingly, we conclude no grave error occurred and deem defendant's argument forfeited on appeal. Because we find the jury was properly instructed, we need not consider defendant's ineffective assistance of counsel argument.

¶ 52                                  III. CONCLUSION

¶ 53          For the reasons stated, we affirm the trial court's judgment.

¶ 54          Affirmed.

*People v. Coates*, 2025 IL App (4th) 231312

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Logan County, No. 22-CM-164; the Hon. William G. Workman, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Gregory G. Peterson (Zachariah Astacio-Palmer, law student), of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Bradley M. Hauge, State's Attorney, of Lincoln (Patrick Delfino and David J. Robinson, of counsel, and Derek Crosby, law student, of State's Attorneys Appellate Prosecutor's Office), for the People. |