NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 230481-U

NO. 4-23-0481

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 13, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Whiteside County |
| TODD M. LAZIO, | ) | Nos. 21CM133 |
| Defendant-Appellant. | ) | 21TR3076 |
| | ) | |
| | ) | Honorable |
| | ) | Jennifer M. Kelly, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Lannerd and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed the judgment of the trial court because (1) the evidence was sufficient to find defendant guilty beyond a reasonable doubt of obstructing a peace officer and (2) the trial court did not err by admitting video-recorded statements of defendant.

¶ 2        In May 2021, following a traffic stop, defendant was issued a notice to appear for the offenses of operating an uninsured motor vehicle (625 ILCS 5/3-707 (West 2020)), driving without a license on his person (*id.* § 6-112), and driving with a defective taillight (*id.* § 12-201(b)). In July 2021, the State charged him by information with obstructing a peace officer, a Class A misdemeanor (720 ILCS 5/31-1(a) (West 2020). In May 2023, a jury found defendant guilty of obstructing a peace officer and operating an uninsured motor vehicle, and the trial court sentenced defendant to 66 days in jail.

¶ 3        Defendant appeals, arguing that (1) the evidence was insufficient to find him guilty

of obstructing a peace officer and (2) the trial court erred by allowing the State to introduce evidence of statements defendant made following his arrest that were irrelevant to the charged offense.

¶ 4        We disagree and affirm.

¶ 5                          I. BACKGROUND

¶ 6                          A. The Charges

¶ 7        In July 2021, defendant was charged by information with obstructing a peace officer (*id.*). The charge alleged that in June 2021, defendant

> "knowingly obstructed the performance of Jacob Reul of an authorized act within his official capacity, being the detainment of [defendant], knowing Jacob Reul to be a peace officer engaged in the execution of his official duties, in that he refused to provide his identification, or name and date of birth, during a traffic stop."

During that traffic stop, Reul issued defendant a notice to appear for operating an uninsured motor vehicle (625 ILCS 5/3-707 (West 2020)), driving without a license on his person (*id.* § 6-112), and driving with a defective taillight (*id.* § 12-201(b)). (We note that the State proceeded to trial on only the obstructing a peace officer and insurance offenses; the record does not state how the driver's license and taillight violations were resolved.)

¶ 8                          B. The Jury Trial

¶ 9        In May 2023, the trial court conducted defendant's jury trial. Prior to jury selection, without objection from the State, the court granted defendant's motion *in limine* to prohibit the admission of evidence of "any other 'bad acts or crimes' of the Defendant *** as such evidence is irrelevant and prejudicial." The parties also filed a stipulation relating to Reul's squad car video titled "STIPULATION, Squad Video Foundation," which was signed by both the prosecutor and

defense counsel and stated as follows:

> "That on May 31, 2021, at approximately 8:44 p.m.[,] Sterling Patrol Officer, Jacob Reul was on routine patrol and in his squad car was a video camera capable of capturing audio and video. That the camera in the Officer's squad car was properly maintained and functioning on said date and time. That the camera fairly and accurately captured the incident that is the subject of this case. That a copy of that recording was forwarded to the Whiteside County State's Attorney's Office. That the Officer has viewed the recording prior to court and verifies that it is indeed a fair and accurate recording of the events. It is further stipulated that said disc is admitted into evidence as People's Exhibit #1 and will be published to the jury."

¶ 10 The trial then commenced, during which only the arresting police officer, Reul, testified. Reul stated that he was employed as a police officer with the Sterling Police Department. On the evening of the traffic stop, he was on routine patrol when he saw defendant driving a car with a "cracked taillight" and "white light emitting from the rear." Reul stopped the car and asked defendant, who was the sole occupant, for his driver's license and proof of insurance. According to Reul, defendant stated that his license was in the car somewhere and made a half-hearted attempt to locate it. Reul asked defendant to simply tell him his full name and date of birth, but defendant did not answer. Instead, defendant insisted on "debat[ing]" whether his taillight was defective. At some point, in response to Reul's requests that defendant identify himself, defendant grabbed a camouflage jacket that was in the car and pointed to the name "Lazio" printed on the nameplate.

¶ 11 Reul also testified that he attempted to obtain defendant's name by running the vehicle's registration number and learned that the car was registered to someone named Brian

Payne. However, upon obtaining an image of Payne through the Illinois Secretary of State's database, Reul determined that defendant was not Payne.

¶ 12 Reul testified that defendant never provided his full name, date of birth, or proof of insurance, but instead "continued arguing" with Reul. Consequently, Reul "took [defendant] into custody for resisting, obstructing a police officer."

¶ 13 Once at the Sterling Police Department, Reul successfully identified defendant by (1) running the name "Lazio" through a countywide database and obtaining the name "Todd Lazio," then (2) running the name "Todd Lazio" through the Illinois Secretary of State's image database and comparing the image to defendant.

¶ 14 The State then moved for admission of Reul's squad car video. Defense counsel objected, arguing that any portion of the video past the 13-minute mark was irrelevant to the offenses of obstructing a peace officer and failure to provide proof of insurance because, at that point, defendant was already under arrest for the charged offenses, which had been completed, and all the remaining video depicted was defendant continuing to "debate the taillight *** in unpleasant language." The State responded that the video was relevant to defendant's mental state.

¶ 15 The trial court overruled defendant's objection, noting that defendant had stipulated that the video would be admitted into evidence and published to the jury.

¶ 16 The State then played approximately six more minutes of the video. Afterward, the State rested, and defendant declined to present evidence.

¶ 17 C. The Jury's Verdict and Defendant's Sentence

¶ 18 The jury found defendant guilty of obstructing a peace officer and driving without insurance. That same day, the trial court sentenced defendant to 66 days in jail (with credit for time served) for obstructing a peace officer and a $501 fine for driving without insurance.

- 4 -

¶ 19      Defendant did not file a posttrial motion.

¶ 20      This appeal followed.

¶ 21                          II. ANALYSIS

¶ 22      Defendant appeals, arguing that (1) the evidence was insufficient to find him guilty of obstructing a peace officer and (2) the trial court erred by allowing the State to introduce evidence of statements he made following his arrest that were irrelevant to the charged offense.

¶ 23      We disagree and affirm.

¶ 24                          A. Jurisdiction

¶ 25      As an initial matter, the State contests this court's jurisdiction to hear this appeal, asserting that defendant did not file a timely notice of appeal. However, our review of the record shows that defendant filed two records on appeal—one under case No. 21-CM-133 and one under case No. 21-TR-3076. While the State is correct that no notice of appeal appears in the common law record under case No. 21-TR-3076, a timely notice of appeal bearing both case numbers appears in the common law record under case No. 21-CM-133. Accordingly, this court has jurisdiction to decide this appeal.

¶ 26                     B. The Sufficiency of the Evidence

¶ 27      Defendant argues that the State presented insufficient evidence to prove him guilty of obstructing a peace officer because his refusal to provide his name, date of birth, or identification to Reul is insufficient as a matter of law to establish the offense of obstructing a peace officer.

¶ 28                          1. *The Applicable Law*

¶ 29                     a. Obstructing a Peace Officer

¶ 30      A person commits the offense of obstructing a peace officer when he knowingly "obstructs the performance of one known to the person to be a peace officer *** of any authorized

- 5 -

act within his or her official capacity." 720 ILCS 5/31-1(a)(2) (West 2020).

¶ 31 "It is well settled that the statute does not 'proscribe mere argument with a policeman about the validity of an arrest or other police action' but instead contemplates conduct 'which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties.' " *People v. Coates*, 2025 IL App (4th) 231312, ¶ 30 (quoting *People v. Raby*, 40 Ill. 2d 392, 399 (1968)).

¶ 32 "Obstruction of a peace officer can be a nonphysical act but must actually hinder or impede the officer's authorized act." *People v. Willis*, 2025 IL App (4th) 231345-U, ¶ 30 (citing *People v. Baskerville*, 2012 IL 111056, ¶¶ 19, 23). The statute requires that the hindrance or impediment be material, and not merely *de minimis*. *People v. Gotschall*, 2022 IL App (4th) 210256, ¶¶ 26, 29.

¶ 33                                      b. The Standard of Review

¶ 34 When a defendant challenges the sufficiency of the evidence, a reviewing court "asks whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Jones*, 2023 IL 127810, ¶ 28. "A reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses." *Id.* "All reasonable inferences from the evidence must be drawn in favor of the State." *Id.* "A criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

¶ 35 We note that defendant argues that *de novo* review applies because "[defendant's] conduct was *** insufficient as a matter of law to establish the offense of obstructing *** a peace officer." Defendant asserts, therefore, that the question of whether his conduct constituted the

offense of obstructing a peace officer is a matter of statutory interpretation. We disagree, noting that the supreme court recently rejected the same argument in *Jones*. *Id.* ¶¶ 20-28.

¶ 36　　　　Regardless, based upon our review of the facts of this case, our conclusion would be the same under either standard.

¶ 37　　　　　　　　　　　　　　　2. *This Case*

¶ 38　　　　Defendant correctly asserts that, to prove obstruction, the State must prove that the defendant's conduct caused more than a brief delay. See *People v. Weathington*, 82 Ill. 2d 183, 187 (1980). He argues, however, that the State failed to prove him guilty of obstructing a peace officer in this case because his "failure to produce a driver's license or provide his name or date of birth" did not significantly delay Officer Reul. Specifically, defendant asserts that (1) "from the time Officer Reul activated the camera until he cuffed [defendant] was less than six minutes," (2) "nothing prevented Officer Reul from arresting [defendant] despite not knowing his name for certain," and (3) defendant "was identified at the police station."

¶ 39　　　　In support of his position, defendant relies primarily on *People v. Taylor*, 2012 IL App (2d) 110222. In *Taylor*, the defendant was charged with obstructing justice after he gave a police officer a false name. *Id.* ¶ 6. (We note that the material impediment requirement applicable to obstructing justice also applies to obstructing a peace officer. *Gotschall*, 2022 IL App (4th) 210256, ¶ 27.)

¶ 40　　　　The evidence in *Taylor* established that Donnell Taylor, who was wanted on a warrant, was crossing the street when an officer who recognized him from previous encounters was driving by. *Taylor*, 2012 IL App (2d) 110222, ¶ 3. The officer testified that he was " 'pretty sure' " the individual was Taylor, but he was not " '100 percent,' " so he asked Taylor for identification. *Id.* ¶ 4. Taylor gave a false name, Keenan T. Smith, which the officer ran through

his computer. *Id.* The officer told Taylor there was no such name in the system and warned him he would be arrested if he gave a false name. *Id.* Taylor insisted his name was Smith. *Id.* The pair talked for a few minutes more when the officer said, " 'Hey, Donnell,' " and Taylor answered, " 'Yeah?' " *Id.* The officer then arrested him on the warrant. *Id.* The officer testified that the entire encounter, from approaching Taylor to handcuffing him, took " 'under ten minutes.' " *Id.*

¶ 41    On appeal, Taylor argued that his actions could not amount to obstruction because his giving a false name did not materially impede the officer's investigation. *Id.* ¶ 8. The appellate court agreed, concluding that "Taylor's initial giving of a false name to [the officer] and his denial that he had identification did not materially impede [the officer's] arrest of Taylor." *Id.* ¶ 17. The court reasoned that (1) "the entire encounter took no more than a few minutes," (2) the officer was " 'pretty sure' " he knew Taylor's true identity, (3) the officer arrested Taylor before he ever saw Taylor's identification card, and (4) the arrest occurred immediately after Taylor "voluntarily decided to cooperate." *Id.*

¶ 42    The present case is different from *Taylor* in each of those four respects. Most significantly, the entire encounter in the present case took longer than the six minutes defendant asserts. In *Taylor*, the police officer was executing an arrest warrant, meaning his investigation was concluded when he confirmed Taylor's identity—someone he was "pretty sure" he recognized on sight—and placed him in handcuffs. Reul, on the other hand, was enforcing violations of the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2020)), meaning his job was not done when he placed defendant in handcuffs. Reul still had to identify defendant in order to issue him traffic citations or, as in this case, the notice to appear. Defendant's conduct made that investigation impossible to complete, as it almost always is, on the roadside, requiring Reul to transport him to the police station and conduct additional database searches at the station to issue the notice to

appear for the traffic violations. That is to say, defendant, through his conduct, turned what should have been a routine traffic stop that could have been concluded fairly quickly at the roadside into something more time-consuming, including transport to the police station and additional database searches to ascertain defendant's identity.

¶ 43　　　The video recording of the traffic stop shows that Reul indeed placed defendant in handcuffs approximately six minutes after observing the initial traffic violation and activating his camera, but Reul testified that he did not arrive at the police station with defendant until 24 minutes into the video. He also testified that identifying defendant was part of his "detainment process." At the time he arrived at the police station with defendant, according to Reul's testimony, he still had not identified defendant and was required to conduct additional database searches inside the station to do so. Although we do not know from the record how long those searches took, we can safely say that the entire encounter and "detainment process" exceeded 24 minutes.

¶ 44　　　Although the inquiry into materiality is fact-intensive, and although the length of the delay is only one factor in that evaluation, it is a "primary factor." *Coates*, 2025 IL App (4th) 231312, ¶ 41 (citing *People v. Mehta*, 2020 IL App (3d) 180020, ¶¶ 32-34). As we stated earlier, defendant is correct that very brief delays do not generally constitute a material hindrance. See *People v. Sadder-Bey*, 2023 IL App (1st) 190027, ¶ 49 (holding "[l]ess than two minutes" elapsing between the police officer's request for the defendant to exit his car and the time when the defendant complied constituted "insubstantial display of antagonism and belligerence, not criminal resisting"); see also *Gotschall*, 2022 IL App (4th) 210256, ¶ 29 (stating the defendant's "brief refusal to place his foot inside the squad car did not materially impede" the police officer from performing authorized act of transporting the defendant to the county jail); *Weathington*, 82 Ill. 2d at 187 (stating the defendant's refusal to answer booking questions for a "few minutes" did not

- 9 -

constitute obstructing). Nonetheless, this court has affirmed convictions for obstructing a peace officer in cases where the delay was six minutes (*Coates*, 2025 IL App (4th) 231312, ¶ 42) and 12 minutes (*People v. Willis*, 2025 IL App (4th) 231345-U, ¶ 20). See *People v. Bobbitt*, 2024 IL App (5th) 230143-U, ¶ 33 (finding that where 21 minutes passed between the police officers' first attempt to remove the defendant from his vehicle to the time they successfully removed him, the defendant's conduct materially impeded or hindered the officers in the performance of their duties).

¶ 45        In *Coates*, 2025 Il App (4th) 231312, ¶ 8, the defendant, like defendant in the present case, was charged with obstructing a peace officer after refusing to provide his identification and insurance information during a traffic stop. After about five or six minutes of "debate" surrounding whether the defendant was required to produce his identification, the police officer removed the defendant from his car. *Id.* ¶ 42. Like defendant in the present case, the defendant in *Coates* "never actually complied" by producing his license, but in *Coates*, the officer was able to obtain it from the defendant's wallet after removing him from his car. *Id.* This court affirmed the defendant's conviction, concluding that "[a]lthough five or six minutes is not an extensive delay in general, a reasonable juror could conclude, under these circumstances, it was more than *de minimis* in the context of a traffic stop that [was] intended to be a relatively brief encounter." *Id.*

¶ 46        We also note that in *Coates*, this court also identified as an additional factor in its materiality analysis the fact that the traffic stop "occurred at night, on the parkway, and while defendant's vehicle was not entirely out of the traffic lane," implicating officer safety concerns. *Id.* In the present case, People's exhibit No. 1 shows the traffic stop occurred just after sundown on a two-lane highway with no passing lanes, with defendant's vehicle's driver's side tires in the

roadway; Ruel was standing in the roadway while speaking with defendant through his window.

¶ 47 In our view, the present case is much more similar to *Coates* than to *Taylor*. In particular, the delay in the present case was significantly longer than in *Coates*. As we have noted, the length of the delay is the primary consideration in determining whether an impediment or hindrance was material. The present case also presents similar officer safety concerns.

¶ 48 We also note that the car defendant was driving was not registered to him, meaning that Reul did not have a quick or easy means of identifying defendant on the roadside during the traffic stop. This made defendant's refusal to identify himself an even greater hindrance to Reul's enforcement of the traffic code.

¶ 49 Accordingly, we conclude that defendant's conduct constituted a material hindrance. The encounter between defendant and Reul arose during what should have been a routine traffic stop. Defendant knowingly chose to impede Reul's enforcement of the traffic code by refusing to identify himself, turning what should have been a brief roadside encounter into a long, drawn-out detainment and investigation. Reul was forced to spend additional time investigating defendant's identity, which was necessary for Reul to complete his duties and issue the notice to appear for the traffic violations. Defendant unquestionably hindered Reul in the performance of his duties. Because the hindrance was not brief, the *de minimis* exception to the materiality requirement does not apply.

¶ 50 For the foregoing reasons, we conclude that, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of obstructing a peace officer beyond a reasonable doubt.

¶ 51 C. The Admission of the Squad Car Video

¶ 52 Defendant also argues that the trial court erred by allowing the State to introduce

irrelevant statements that defendant made on the squad car video while being transported and those statements served only to depict defendant in a negative light. Defendant characterizes the portion of the video showing the statements as an "exasperated rant." As examples, the video depicted defendant saying (1) the police could "keep the fucking car," (2) Ruel should "make it count this time," (3) it was the "last damned time" they would steal from him," (4) the police were "fucking thieves" and "fucking Nazis" that he regretted going to war for, (5) he hoped Reul would "accidentally" shoot himself, and (6) he would "retire from a life of crime" to "steal from you" because "you guys are not very good at catching people." Defendant also referred to his losing his job due to COVID-19 and being injured. He lamented that he would have to "start his whole life over again over a stupid fine."

¶ 53        The State argues that defendant forfeited this argument by failing to file a posttrial motion. *People v. Johnson*, 2024 IL 130191, ¶ 40 (requiring a defendant to object at trial and then raise the alleged error in a posttrial motion to avoid forfeiture). Defendant responds that "[t]he matter proceeded to sentencing immediately after the verdict, and as a result a post-trial motion was not possible." Defendant asks that, if this court believes the issue was not properly preserved, the error be reviewed under the plain-error doctrine. However, "if there is no error, then there can be no plain error." *People v. Maury*, 2025 IL App (4th) 220887, ¶ 93. Accordingly, whether the issue was properly preserved or not, for the reasons that follow, our conclusion would be the same: the trial court did not err by allowing the admission and publication of defendant's statements captured on the squad car video.

¶ 54        First, at the beginning of the jury trial, defendant entered a written stipulation to the admission and publication of People's exhibit No. 1, which was identified in the stipulation as a disc containing video captured by Reul's squad car video. The stipulation to the admission and

publication of the disc marked as People's exhibit No. 1 was not limited in any way.

¶ 55        At the conclusion of the State's direct examination of Reul, the prosecutor asked, in front of the jury, that "the officer's video be admitted as People's Exhibit Number 1 and be played at this point." Despite having already stipulated to the admission and publication of the exhibit, defendant objected to the publication of the portion of the video showing him in the back of the squad car. Defendant asserted, "[T]he relevant interaction ends when [defendant] is placed under arrest and placed in the squad car. To the extent that he has obstructed anything, it is already done as indicated by Officer Ruel's testimony that he then arrested him for obstruction."

¶ 56        The State responded that the entire video was relevant because it captured the entirety of the interaction.

¶ 57        The trial court pointed out that defendant had entered into a stipulation and asked defense counsel if she knew "that there was audio at some portion during the video" that she had stipulated to. Counsel responded that she was "aware that there [was] audio on the video," but she "disagree[d] that stipulating to the foundation of a video stipulates to its relevance."

¶ 58        The problem for defendant is that he stipulated to more than the foundation for the video; he stipulated to its admission and publication as well. And the stipulation was to the admission and publication of the entire video captured on the disc identified as People's exhibit No. 1, not a mere portion thereof.

¶ 59        Defendant's argument is nearly identical to one we recently addressed in *Gorski v. Katherine Shaw Bethea Hospital*, 2025 IL App (4th) 240093-U. In *Gorski*, the parties in a medical malpractice case stipulated at the beginning of the jury trial to the admission into evidence of certain joint exhibits, which were the plaintiff's medical records. *Id.* ¶ 90. During trial, when defense counsel attempted to question a witness about a particular medical note contained in the

exhibit, the plaintiff objected in part on relevance grounds. *Id.* ¶ 94. The trial court overruled the objection. *Id.*

¶ 60　　　　On appeal, the plaintiff argued that the trial court erred by allowing defense counsel to question the witness with the medical note because " '[t]he stipulation was not intended to bring all the medical records before the jury.' " *Id.* ¶ 127. This court rejected that argument, noting that "the general rule in Illinois is that a party who stipulates to evidence may not 'later contend on appeal that the course of action was in error.' " *Id.* (quoting *People v. Carter*, 208 Ill. 2d 309, 319 (2003)).

¶ 61　　　　Regardless, even if defendant had not stipulated to the admission and publication of People's exhibit No. 1 without limitation, the trial court did not err by overruling defendant's objection to playing the portion of the exhibit depicting defendant's behavior and statements while being transported to the police station because that portion of the video was relevant to whether defendant committed the offense of obstructing a peace officer.

¶ 62　　　　"Obstruction of a peace officer under section 31-1 'requires that the obstruction must be knowingly done; meaning that the defendant must be consciously aware that his conduct is practically certain to cause the result.' " *Mehta*, 2020 IL App (3d) 180020, ¶ 38 (quoting *Baskerville*, 2012 IL 111056, ¶ 23 n.1). Defendant's behavior in the back of the squad car as he was being transported to the station was relevant to his state of mind—that is, to show that he was knowingly impeding Reul. Defendant's comments and behavior tended to show that he intended to make Reul's job as difficult as he could due to his general dislike of the police based upon past experience, or for no reason other than to be belligerent.

¶ 63　　　　More importantly, however, the portion of the video showing defendant's behavior while being transported was directly relevant to the length of the delay defendant caused by his

behavior. As we have explained, the length of the delay is the primary focus when determining whether the conduct amounted to a *de minimis* delay or a material delay. Moreover, the video showed that defendant still did not identify himself while being transported, further necessitating Reul's subsequent database searches. Accordingly, the trial court did not err by allowing the State to play the video showing, from Reul's perspective, the additional time it took for him to transport defendant to the police station because that time was directly relevant to an essential element of the offense.

¶ 64  Because defendant stipulated to the video in its entirety and the video was relevant, the trial court did not err by allowing the State to publish the exhibit to the jury in its entirety.

¶ 65  III. CONCLUSION

¶ 66  For the reasons stated, the judgment of the trial court is affirmed.

¶ 67  Affirmed.