2022 IL App (4th) 210256

NO. 4-21-0256

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 29, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| LANDON R. GOTSCHALL, | ) | No. 19CM1113 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Scott J. Black, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Turner and Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Landon R. Gotschall, appeals his conviction for resisting or obstructing a peace officer. Defendant contends the evidence at trial was insufficient to prove him guilty beyond a reasonable doubt because it failed to show his conduct materially impeded an authorized act of a peace officer. Defendant also argues the trial court did not conduct an adequate *Batson* hearing. See *Batson v. Kentucky*, 476 U.S. 79 (1986). We reverse.

¶ 2                                I. BACKGROUND

¶ 3        Defendant was charged with two counts of resisting or obstructing a peace officer (720 ILCS 5/31-1(a) (West 2018)). Count I alleged defendant knowingly obstructed Officer Paul Williams in the performance of his duties by shouting at him and refusing to walk away from him after Williams directed defendant to walk away. Count II alleged:

"[T]he defendant knowingly obstructed the performance of Bloomington Police Officer Mitchell Filarski of an authorized act within his official capacity, being the custodial transportation of the defendant, by refusing to physically enter a police vehicle for his custodial transport after Officer Filarski directed the defendant to enter the vehicle, and the defendant knew Officer Filarski was a peace officer at the time."

¶ 4 At a jury trial, Williams testified that, on the night of the incident, he was monitoring traffic downtown when defendant and another individual made derogatory remarks to him and called him "a bunch of filthy names." He asked them multiple times to leave the area, but they refused and continued making derogatory remarks. Williams then pepper-sprayed them. Defendant and the other individual got down on the ground, and Williams called for backup. Other officers eventually arrived, and defendant was arrested. The trial court admitted a surveillance video of the incident into evidence.

¶ 5 Filarski testified that he received a call for backup on the night of the incident. When he arrived at the scene, he observed defendant and another man on the ground with several officers standing next to them. Filarski escorted defendant to his squad car. Filarski attempted to place defendant in the back seat of the car. Defendant "partially" sat in the seat, but one of his feet was still on the pavement. Filarski could not close the door, so he asked defendant to place his foot in the car. Defendant asked, "What did I do?" Filarski did not respond. Filarski again told defendant to put his foot in the vehicle, but defendant did not comply. Filarski reached down to put defendant's foot into the vehicle. Defendant resisted by pushing his leg back down to the pavement. Due to defendant's noncompliance, Filarski removed his pepper spray, "put it in [defendant's] face," threatened to spray him, and told him to put his foot in the car. Defendant

complied. Less than 30 seconds elapsed between the time when Filarski initially told defendant to get in the squad car and when defendant had both of his feet inside the car.

¶ 6 A video recording of the incident from Filarski's body camera was admitted into evidence. The video recording showed Filarski walking with defendant while defendant was wearing handcuffs. As they were walking, defendant said: "I'll do whatever you want. I'm sorry. I'm sorry." They arrived at Filarski's squad car a few seconds later. Filarski said, "All right, partner. We'll sit you in the back here. I'll put the seatbelt on you, all right?" Defendant sat down in the back seat and asked, "What did I do?" Filarski did not answer. He told defendant to put his foot in the vehicle. Defendant's feet were not visible in the recording. Defendant again asked, "What did I do?" Filarski responded, "We're not going to argue. Put your foot in." Filarski then attempted to physically move defendant's foot. Defendant again asked, "What did I do?" Filarski replied, "You're gonna get sprayed again. Put your foot in the car." Filarski then buckled defendant's seatbelt and shut the door of the vehicle. Thirty seconds elapsed from the time Filarski first told defendant to get in the squad car and the time Filarski shut the car door.

¶ 7 Defendant testified that he picked up a friend from a bar on the night of the incident. Defendant stated his friend made derogatory comments to Williams that night, but defendant made no such comments. Williams pepper-sprayed defendant, and another officer put handcuffs on him. Filarski then told defendant to "come take a seat." Defendant did not realize that he was going to the officer's squad car or that he was being arrested. Defendant only heard Filarski to tell him to put his foot in the car one time. Defendant stated he and Filarski were both talking at the same time, and he could not hear or see Filarski very well. He was scared and confused. Putting his leg back on the ground after Filarski grabbed it was a "natural reaction" for him.

¶ 8            The jury found defendant not guilty of resisting or obstructing a peace officer as charged in count I but guilty of resisting or obstructing a peace officer as charged in count II. The trial court sentenced defendant to 18 months' conditional discharge, 100 hours of community service work, and the payment of certain monetary assessments. This appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10           On appeal, defendant argues (1) the evidence at trial was insufficient to prove him guilty beyond a reasonable doubt, and (2) the trial court did not conduct an adequate *Batson* hearing. We first consider defendant's challenge to the sufficiency of the evidence.

¶ 11           Defendant argues the State presented insufficient evidence that he obstructed a peace officer as charged in count II of the information because it failed to present any evidence that defendant's conduct "materially obstructed Filarski for more than a *de minimis* period of time." When presented with a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 12           To prove defendant guilty of resisting or obstructing a peace officer, the State was required to show defendant knowingly resisted or obstructed the performance by an individual known to be a peace officer of any authorized act within his official capacity. 720 ILCS 5/31-1(a) (West 2018). In the instant case, defendant was charged with obstructing Filarski by "refusing to physically enter a police vehicle for his custodial transport after Officer Filarski directed the defendant to enter the vehicle."

¶ 13    Defendant contends that, in order prove him guilty of obstructing a peace officer, the State was required to show his obstructive conduct created a "more than a *de minimus* [*sic*] imposition into an officer's investigation." In support of his argument, defendant cites three Illinois Supreme Court cases—*People v. Comage*, 241 Ill. 2d 139 (2011), *People v. Baskerville*, 2012 IL 111056, and *People v. Casler*, 2020 IL 125117. The State contends these cases do not support defendant's position and asserts that "Illinois law does not establish a minimum period of time in which a defendant can impede, resist, or obstruct a peace officer" before the defendant may be charged with violating section 31-1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/31-1(a) (West 2018)). In determining the issue presented, we first consider whether the authority cited by defendant supports the existence of a material impediment requirement for the offense of obstructing a peace officer.

¶ 14                            A. Material Impediment Requirement

¶ 15    In *Comage*, the defendant was convicted of obstruction of justice in violation of section 31-4 of the Code (720 ILCS 5/31-4 (West 2006)) in that he knowingly concealed physical evidence. *Comage*, 241 Ill. 2d at 143. The trial evidence demonstrated an officer saw the defendant throw a cocaine pipe over a wooden privacy fence while running from the police. *Id.* at 142-43. The pipe was found 10 feet from where the defendant was apprehended, and the officer located the pipe approximately 20 seconds after going to look for it. *Id.* at 143. On appeal, the defendant argued the trial evidence was insufficient to prove him guilty beyond a reasonable doubt because the pipe was never "concealed" within the meaning of the obstructing justice statute. *Id.*

¶ 16    The *Comage* court stated that "in enacting section 31-4, the legislature intended to criminalize behavior that *actually* interferes with the administration of justice, *i.e.*, conduct that

'obstructs prosecution or defense of any person.' " (Emphasis in original.) *Id.* at 149. The court further stated: "[A] defendant who places evidence out of sight during an arrest or pursuit has 'concealed' the evidence for purposes of the obstructing justice statute if, in doing so, the defendant actually interferes with the administration of justice, *i.e.*, materially impedes the police officers' investigation." *Id.* at 150. The *Comage* court reversed the defendant's conviction, holding the defendant did not "materially impede" the officers' investigation and, accordingly, did not "conceal" the crack pipe within the meaning of the obstructing justice statute. *Id.* at 150-51.

¶ 17        In *Baskerville*, 2012 IL 111056, ¶ 3, the defendant was charged with obstructing a peace officer by providing false information concerning the location of his wife. The trial evidence showed an officer observed the defendant's wife driving at a time when her license was suspended, and he followed her home in his squad car. *Id.* ¶¶ 4-6. The defendant's wife pulled into the driveway and exited her vehicle. *Id.* ¶ 6. The officer asked her to return to her vehicle, but she walked into the house instead. *Id.* The defendant then exited the house, and the officer asked him to go inside and retrieve his wife because she had been driving on a suspended license. *Id.* ¶ 7. The defendant told the officer he had been driving the vehicle, and his wife was not at home. *Id.* The defendant went inside the house but later returned, stating he did not know what was " 'going on.' " *Id.* He offered that the officer could enter the house to search for his wife. *Id.* However, the officer said he would send the defendant's wife a ticket in the mail. *Id.* The defendant's wife was eventually served with a citation several weeks later. *Id.* ¶ 12. The trial court found the defendant guilty of the obstruction charge. *Id.* ¶ 13.

¶ 18        The *Baskerville* court considered the issue of whether the offense of obstructing a peace officer required a physical act. *Id.* ¶¶ 20-23. Using a dictionary definition, the court stated

the term " 'obstruct' encompasses physical conduct that literally creates an obstacle, as well as conduct the effect of which impedes or hinders progress." *Id.* ¶ 19. The court found "providing false information may constitute obstruction under section 31-1(a) when the misinformation interposes an obstacle that impedes or hinders the officer and is relevant to the performance of his authorized duties." *Id.* ¶ 29. The court held there was insufficient evidence to prove the defendant guilty of obstructing a peace officer because "[a]t no point did [the] defendant's false statement that [his wife] was not home hinder [the officer] in executing the traffic stop." *Id.* ¶ 35.

¶ 19        In *Casler*, 2020 IL 125117, ¶ 20, the defendant argued the evidence was insufficient to prove him guilty of obstructing justice by furnishing false information because the State failed to prove his conduct "materially interfered" with a police investigation. The State argued the obstructing justice statute did not include a material impediment requirement. *Id.* ¶ 22. The *Casler* court held the case law of the Illinois Supreme Court had "long established that section 31-4(a) of the Criminal Code requires a showing of material impediment." *Id.* ¶ 33. The court first discussed the holding in *Comage*. *Id.* ¶¶ 33-35. The court then stated that, in *Baskerville*, it had "again examined, in a slightly different context, the issue of whether a defendant's false statement can interfere with the administration of justice." *Id.* ¶ 37. The *Casler* court characterized the holding in *Baskerville* as finding that "furnishing false information may constitute obstructing a peace officer when a material impediment is established." *Id.* ¶ 40.

¶ 20        The *Casler* court stated it had previously found "sections 31-1 and 31-4 of the Criminal Code, both obstruction statutes, were related in that section 31-1 targets acts that obstruct police officers, while section 31-4 targets specific acts that constitute obstructive conduct, one of which is furnishing false information." *Id.* ¶ 41. The court concluded:

"Construed together, *Comage* and *Baskerville* firmly establish that a defendant's acts must be a material impediment and must be proved in a prosecution for obstructing justice." *Id.*

¶ 21 The *Casler* court explicitly rejected an interpretation of *Comage* that would limit application of its holding to cases involving the concealment of evidence. See *id.* ¶¶ 43-47. The court approvingly cited *People v. Taylor*, 2012 IL App (2d) 110222, which interpreted *Comage* as incorporating a material impediment requirement into the entire obstructing justice statute. *Casler*, 2020 IL 125117, ¶ 47. The *Casler* court noted the *Taylor* court had recognized " 'the relevant inquiry under *Comage* [was] whether, and to what extent, the defendant's actions actually interfered with the police investigation.' " *Id.* ¶ 45 (quoting *Taylor*, 2012 IL App (2d) 110222, ¶ 14).

¶ 22 Although not cited by the parties, we also find relevant the Third District's decision in *People v. Mehta*, 2020 IL App (3d) 180020, which was decided after *Baskerville* but before *Casler*. In *Mehta*, the defendant was convicted of obstructing a peace officer. *Id.* ¶ 12. The evidence showed that officers pulled over a vehicle in which the defendant was a passenger after receiving a report from a complainant that "two men had been chasing him with a gun." *Id.* ¶¶ 4, 9. The defendant exited the vehicle, and the officers ordered him to turn around multiple times. *Id.* ¶ 6. The defendant never turned around. *Id.* He eventually walked "forward to the officers," and the officers took him into custody. *Id.* The entire interaction lasted three minutes or less. *Id.* ¶¶ 8, 11. One of the officers testified the traffic stop was a " 'very high stress situation,' " the defendant's refusal to turn around put the officer at risk, and the defendant's conduct interfered with the officers' ability to investigate whether there was anyone else in the vehicle or a gun in the vicinity. *Id.* ¶ 11.

¶ 23          The *Mehta* court considered the question presented in this case—namely, whether a *de minimis* exception applies to the obstructing a peace officer statute. *Id.* ¶ 19. The court stated:

> "A *de minimis* exception and an implicit component of materiality are two sides of the same coin. While an act might hinder or impede an official act in the technical sense, that hindrance or impediment may be so minimal as to not be considered a violation of the statute in question." *Id.* ¶ 21.

¶ 24          The *Mehta* court found *Baskerville* "strongly implie[d]" that the same materiality component applied by the *Comage* to section 31-4 of the Code (obstructing justice) also applied to section 31-1 of the Code (obstructing a peace officer). *Id.* ¶ 22. The *Mehta* court noted the supreme court had previously observed that "sections 31-1 and 31-4 of the Code contemplate the same 'obstructive conduct' but that section 31-4 merely targets an enumerated subset thereof." *Id.* ¶ 23 (quoting *Baskerville*, 2012 IL 111056, ¶ 28). The court found that the definition of "obstruct" must be the same between the two statutes, as neither statute defined the term and any inquiry into the term's meaning would require a court to look to the dictionary definition pursuant to the rules of statutory construction. *Id.* The *Mehta* court concluded:

> "Where the obstructive conduct contemplated by sections 31-1 and 31-4 is the same in nature, and the definition of the term itself is the same across the statutes, it follows that the materiality requirement recognized in *Comage* to obstruction of justice must also apply to obstruction of a peace officer." *Id.*

¶ 25          The *Mehta* court ultimately affirmed the defendant's conviction for obstructing a peace officer, holding that a rational trier of fact could have found beyond a reasonable doubt that the defendant's refusal to turn around during the traffic stop materially impeded the officers'

performance of their duties. *Id.* ¶¶ 35, 43. The court stated that, although the defendant's conduct caused only a brief delay in the traffic stop, the nature of the obstructive act and the nature of the authorized act being obstructed were also relevant considerations. *Id.* ¶¶ 32-35. The court noted the defendant's conduct occurred during a "high-tension situation for the police," as they had stopped his vehicle on suspicion that the occupants were in possession of a firearm in an area known for gang activity. *Id.* ¶ 35. The court found the defendant "exacerbated the already elevated officer safety concerns by repeatedly ignoring orders given specifically for the protection of the officers." *Id.* The *Mehta* court stated: " '[A]ny behavior that actually threatens an officer's safety or even places an officer in fear for his or her safety is a significant impediment to the officer's performance of his or her duties.' " *Id.* (quoting *People v. Synnott*, 349 Ill. App. 3d 223, 228 (2004)).

¶ 26            After reviewing *Comage*, *Baskerville*, *Casler*, and *Mehta*, we agree with defendant that the offense of obstructing a peace officer set forth in section 31-1(a) of the Code includes a material impediment requirement. Although *Casler* and *Comage* concerned the obstructing justice statute rather than the obstructing a peace officer statute, our supreme court has indicated that the obstructive conduct contemplated by both statutes is the same in nature. See *Casler*, 2020 IL 125117, ¶ 41; *Baskerville*, 2012 IL 111056, ¶ 28. Moreover, the supreme court clarified in *Casler* that it had held in *Baskerville* that "furnishing false information may constitute obstructing a peace officer when a material impediment is established." *Casler*, 2020 IL 125117, ¶ 40.

¶ 27            While *Baskerville* involved the obstructive conduct of providing false information to a police officer, the *Casler* court held, in the related context of the obstructing justice statute, that the material impediment requirement applied to *all* the obstructive conduct set forth in

- 10 -

section 31-4(a) of the Code and was not limited to the "concealment clause" at issue in *Comage*. *Id.* ¶ 52. In the context of the offense of obstructing a peace officer, the supreme court decisions in *Comage*, *Baskerville*, and *Casler*, taken together, lead us to conclude that the material impediment requirement set forth in *Baskerville* should logically apply to any obstructive conduct alleged to have hindered or impeded authorized acts of peace officers in violation of the statute. We note that our conclusion is consistent with the Third District's analysis in *Mehta*.

¶ 28                                                    B. Defendant's Conduct

¶ 29          Having found the obstructing a peace officer statute contains a material impediment requirement, we proceed to consider whether defendant's conduct in the instant case materially impeded or hindered Filarksi in the performance of his authorized duties. See *Mehta*, 2020 IL App (3d) 180020, ¶ 26. We conclude that defendant's brief refusal to place his foot inside the squad car did not materially impede Filarski from performing the authorized act of transporting defendant to the county jail. The recording of the incident reflects that less than 30 seconds passed between the time Filarski asked defendant to place his foot in the squad car and when defendant ultimately complied. During this time, defendant repeatedly asked Filarski why he was being arrested. Once Filarski threatened to spray defendant with pepper spray, defendant placed his foot inside the vehicle and was transported to the jail without incident. Defendant's conduct did not threaten Filarski's safety nor did it delay his transport by any appreciable period of time.

¶ 30          In reaching our holding, we note that the State argues a defendant should not be "free to obstruct an officer" for any period of time because "[r]equiring an officer to permit such obstruction for an undetermined amount of time would only serve to escalate unlawful behavior and jeopardize officer safety." However, our holding does not require an officer to "permit"

obstructive conduct for any period of time before he or she may act. It simply means conduct that does not materially impede an authorized act of a peace officer will not support a conviction for obstructing a peace officer, even though such conduct may hinder or impede an authorized act in a technical sense. See *id.* ¶ 21. Also, a defendant's conduct may be found to materially impede an authorized act of a peace officer, even if it causes only a brief delay, if it threatens officer safety. See *id.* ¶¶ 31-35; *Synnott*, 349 Ill. App. 3d at 228. In the instant case, defendant's brief refusal to place his foot inside the squad car at a time when he was handcuffed and seated in the back of the car did not threaten the safety of Filarksi.

¶ 31        Because we find the trial evidence was insufficient to prove defendant guilty beyond a reasonable doubt of obstructing a peace officer, we reverse defendant's conviction and do not reach his *Batson* challenge.

¶ 32                                III. CONCLUSION

¶ 33        For the reasons stated, we reverse the judgment of the trial court.

¶ 34        Reversed.

*People v. Gotschall*, 2022 IL App (4th) 210256

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 19-CM-1113; the Hon. Scott J. Black, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Stephen L. Gentry, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Don Knapp, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Timothy J. Londrigan, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |