2025 IL App (4th) 241234

NO. 4-24-1234

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 6, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| LARISSA ERIN WALSTON, | ) | No. 21CM1698 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Scott Paccagnini, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court, with opinion.
Justices Steigmann and Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Larissa Erin Walston, was convicted by a jury of resisting a peace officer and sentenced to 48 hours of jail time and ordered to pay fines and costs. She appeals her conviction, arguing (1) the State failed to prove her guilty beyond a reasonable doubt and (2) the trial court erred in omitting two essential elements of the offense from the jury instructions.

¶ 2    For the following reasons, we affirm.

¶ 3                          I. BACKGROUND

¶ 4    On August 26, 2021, defendant was charged by criminal complaint with one count of resisting a peace officer, a Class A misdemeanor, pursuant to section 31-1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/31-1(a) (West 2020)). The complaint alleged that on or about August 25, 2021, defendant knowingly resisted the performance of Officer Justin Graceffa of an authorized act within his official capacity, with the authorized act being the arrest of defendant,

and that she knew him to be a law enforcement agent engaged in the execution of his official duties at the time. Specifically, the complaint alleged that defendant ran away from Officer Graceffa after being ordered to stop.

¶ 5    On August 19, 2024, just prior to defendant's jury trial, the State was granted leave to file an information *instanter*. This information again charged defendant with resisting a peace officer on August 25, 2021, in violation of section 31-1(a) of the Code (*id.*). In court, defense counsel acknowledged his receipt of the information, telling the court that it "just clean[ed] up some of the language" of the prior complaint. The record indicates that this information superseded the complaint. The court entered a plea of not guilty for defendant.

¶ 6    Defendant's jury trial began on August 20, 2024. Officer Graceffa testified that on August 25, 2021, he was a patrol officer for the Rockford Police Department. At 7:35 a.m. that day, he was driving near Rockford City Hall, searching for defendant, who had a warrant for her arrest. He stated he was familiar with defendant and those she associated with and knew them to frequent the area. He confirmed he was dressed in a police uniform consisting of dark blue pants, a dark blue polo shirt labeled with "Rockford Police," and a bulletproof vest with markings on the front and back reading "Rockford Police." He drove a white Ford Explorer that was labeled "police" on each side and had red and blue emergency lights on its roof.

¶ 7    Graceffa testified that his squad car was equipped with a camera that would begin recording either when activated manually or when the vehicle's emergency lights were activated. He explained that the camera was always rolling, but it would only record when activated, and it would include footage from a minute or so prior to being activated. Graceffa's squad car footage from that morning was admitted and published without objection.

¶ 8    The footage shows Graceffa's vehicle turning into a parking lot and approaching

an alley on the other side of the lot. Defendant can be seen on the side of a building to the left of the alley. As Graceffa approaches, defendant enters the alley and begins jogging down it, with one hand in the pocket of her pants and her back to Graceffa. Graceffa stops and exits his vehicle, shouting, "Larissa, stop!" The reflection from the vehicle's emergency lights can be seen in a window across the alley in front of defendant. Defendant continues to run, without turning around or otherwise acknowledging Graceffa. When she reaches the end of the alley, a second marked squad car cuts her off, coming to an abrupt stop in front of her. Defendant pivots around the car, and continues running to her right, exiting the alley and disappearing from view around the side of a building. Graceffa and the officer who was driving the second car pursue defendant around the corner, also leaving the camera's view. Approximately 15 seconds later, a third officer runs by the camera in the direction of defendant. Before this officer reaches the end of the alley, Graceffa and the second officer reappear, guiding defendant, who is handcuffed between them, back through the alley to Graceffa's vehicle. Defendant can be heard screaming "Leslie!" and can be seen twisting away from the officers' grip, complaining that her arm is being twisted.

¶ 9        Graceffa testified that when suspects flee, it is imperative to get them into custody as quickly as possible to avoid escalating the situation. He explained that, in fleeing, a suspect may run into a residence that is not theirs, a building, or traffic. He also highlighted the narrow confines of the alley they were in and defendant's hand in her pocket, which signaled the possibility that she carried a weapon, as facts that intensified the situation. On cross-examination, he stated that he did not specifically recall defendant asking why she was being arrested, being told she had a warrant, or asking what the warrant was for.

¶ 10        Lieutenant Bradley Stien testified that at the time of the offense, he was a patrol sergeant with the Rockford Police Department and was called to the area to assist officers in

executing a warrant. He stated that he was wearing a police uniform at the time and driving a marked squad car. He testified that Graceffa radioed to say he had located defendant and gave Stien her location. Stien drove to the opposite end of the alley from Graceffa in an attempt to block defendant's exit. Stien stated that he had his driver's side window down when he pulled into the alley. Footage from Stien's dashboard camera was admitted and published without objection.

¶ 11 In the footage, Stien pulls his vehicle into the alley and is immediately confronted with defendant. Stien orders, "Get down," and defendant pivots to her right and runs out of the frame. Stien stops his vehicle and quickly exits. Off camera, he can be heard telling defendant to get down and put her hands behind her back, while defendant begins screaming, "Leslie!" Approximately 13 seconds after Stien stops his vehicle, a metal clicking sound can be heard, which Stien confirmed was the sound of defendant being handcuffed. Approximately seven seconds later, defendant can be heard asking, "What am I under arrest for?" One of the officers—Graceffa or Stien—responds, "You have a warrant." Defendant asks, "For what?" Stien testified that defendant was not told what the warrant was for. The footage ends with the officers walking defendant down the alley to Graceffa's vehicle. According to Stien, defendant ran from them for an approximate distance of one block before they were able to apprehend her.

¶ 12 Following Stien's testimony, the State rested. Defense counsel made a motion for a directed verdict, arguing the State had shown no evidence the police were performing an authorized act or that defendant knowingly resisted arrest. The trial court denied the motion.

¶ 13 Defendant testified in her own defense. She stated that on August 25, 2021, she was engaged in an occupation of Rockford City Hall in a protest against police brutality. At the time of the incident, she and an acquaintance named Leslie were at the location, and she was tasked with watching the area while Leslie slept. She stated she became aware of a police presence in the

area and explained "because of the reasons why [they] were maintaining space at City Hall, [they] tried to be proactive about being aware and watching what the police were doing." She stated that she went down the alley in an attempt to ascertain where the police were located and what was happening. She denied being aware of Graceffa or his vehicle at any point or hearing him call to her. She stated that when Stien's car pulled in front of her, she ran to the right only to get out of the way of the moving vehicle, which she assumed was going to drive down the alley. She recalled that a few seconds after avoiding Stien's car, she became aware that Stien was addressing her and slowed down. She testified that it was a matter of seconds between when she realized Stien was addressing her and when she was apprehended. She stated she was not aware of any reason the police would have had to arrest her that morning and had no intention of evading the police. On cross-examination, defendant stated her belief that she was compliant with the police when she was taken into custody. When asked if she had cursed at the police and expressed the hope that they died, she stated she did not recall.

¶ 14        The defense then rested. The trial court excused the jury and discussed jury instructions with counsel. The court began by asking defense counsel if he had submitted any proposed jury instructions. Counsel stated he had one to submit and that he had also reviewed those submitted by the State. Defense counsel submitted Illinois Pattern Jury Instructions (IPI), Criminal, No. 5.01B (approved Oct. 28, 2016), which provided a definition of "knowingly." The State objected to giving this instruction, arguing the instruction was confusing and the jurors could use their common sense in deciding the case. The court overruled the State's objection.

¶ 15        The trial court then went through 16 jury instructions tendered by the State, one by one. For 15 of them, defense counsel stated, "No objection." The remaining instruction, State's instruction No. 14, provided as follows:

"To sustain the charge of resisting or obstructing a peace officer, the State must prove the following propositions:

*First Proposition*: That Justin Graceffa was a peace officer; and

*Second Proposition*: That the defendant knew Justin Graceffa was a peace officer; and

*Third Proposition*: That the defendant knowingly resisted or obstructed the performance by Justin Graceffa of an authorized act within his official capacity.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 16        In response to the trial court's inquiry on this instruction, defense counsel stated, "I believe it should just read knowingly resists. It's following the language in the information." The State responded that in drafting the instruction, it had followed the language of the model IPI. See Illinois Pattern Jury Instructions, Criminal, No. 22.14 (approved May 4, 2018) (hereinafter IPI Criminal No. 22.14). Defense counsel then stated, "Judge, the IPI does read resists or obstructs, so it's not a bracketed so I don't object." The State offered to file another jury instruction consistent with the information in the case, which charged only resisting and not obstructing, but defense counsel declined, stating, "That's what the Supreme Court says, so that's what we have to go by." Later, the court reiterated:

"So we have the State's Instruction No. 14, which has been admitted. It indicates that a person commits the offense of resisting or obstructing a peace officer when he knowingly resists or obstructs the performance of any authorized act within the official capacity of one known to him to be a peace officer."

It then went through the other jury instructions that would be given, including defendant's definition of "knowingly." The court asked if the parties agreed. The State answered, "Yes." Defense counsel stated, "I concur."

¶ 17 The trial resumed and the State recalled Officer Graceffa, who testified that defendant was not compliant when taken into custody. He stated that, in addition to a front-facing camera, his squad car also had an interior camera that recorded the rear seat of the vehicle. The State attempted to introduce footage from this camera, but defense counsel objected, arguing the footage was cumulative of Graceffa's testimony. The trial court overruled the objection, and a six-second clip was shown, in which defendant sits in the rear seat of Graceffa's car and addresses the officers standing outside of the car, stating, "Fuck you, you fucking pussies. I hope you fucking die."

¶ 18 Following closing arguments, the trial court instructed the jury on the law consistent with the instructions the parties had discussed, including State's instruction No. 14, recited above.

¶ 19 The jury found defendant guilty of resisting or obstructing a police officer. On September 12, 2024, defendant filed a motion for a new trial, arguing, in relevant part, that the State did not prove her guilty beyond a reasonable doubt and the court erred in denying her motion for a directed verdict. A sentencing hearing was held on September 19, 2021, at which defendant's motion was denied, and she was sentenced to the mandatory minimum of 48 hours of jail time and ordered to pay fines and costs.

- 7 -

¶ 20        This appeal followed.

¶ 21                            II. ANALYSIS

¶ 22        Defendant raises two issues on appeal. First, she argues the State failed to prove her guilty of resisting a peace officer beyond a reasonable doubt because the State did not prove (1) she knowingly resisted arrest, (2) her actions materially hindered Officer Graceffa's duties, or (3) there was an underlying offense for which she was subject to arrest. Second, she argues the trial court erred in omitting two essential elements of the offense from the jury instructions, in violation of her constitutional rights to due process and a fair trial. We will address each argument in turn.

¶ 23                        A. Sufficiency of the Evidence

¶ 24        The due process clause of the fourteenth amendment of the United States constitution (U.S. Const., amend. XIV) requires that a person may not be convicted except upon proof beyond a reasonable doubt of every element of the crime with which she is charged. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). When reviewing the sufficiency of the evidence, we consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* In making this determination, we will give the State the benefit of all reasonable inferences. *Id.* at 116. It is not our role to retry a defendant; we instead give great weight to the fact finder's conclusions regarding witness credibility and the resolution of any inconsistencies in the evidence. *People v. Borders*, 2020 IL App (2d) 180324, ¶ 30. Evidence may be sufficient even if it is circumstantial. *People v. Kotlinski*, 2011 IL App (2d) 101251, ¶ 38. A defendant's conviction will be reversed only where the evidence is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." *Wheeler*, 226 Ill. 2d at 115.

¶ 25                                1. *Knowing Resistance*

¶ 26            To be convicted of resisting a peace officer, a defendant must know that "(1) the person obstructed or resisted was a peace officer and (2) the defendant's actions would obstruct or resist the officer's authorized act." *Borders*, 2020 IL App 2d 180324, ¶ 33; see 720 ILCS 5/31-1(a) (West 2020). "Intent, such as knowingness, may be proven by circumstantial evidence and inferred from the defendant's action and the conduct surrounding it." *People v. Jackson*, 2017 IL App (1st) 142879, ¶ 24. " 'Although the intention to arrest must be communicated, and a defendant's understanding of that intent is a factor to be considered,' " the test is not what a particular defendant actually thought, but what a reasonable person, innocent of any crime, would have thought in the defendant's shoes. (Internal quotation marks omitted.) *Borders*, 2020 IL App 2d 180324, ¶ 56. It is not necessary for an officer to explicitly tell a defendant he is under arrest in order to support the conclusion that the defendant knew he was being arrested. *Id.*

¶ 27            Defendant argues the evidence was insufficient to establish she knowingly resisted Officer Graceffa's attempt to arrest her. She notes that she was not told she was under arrest until after officers seized her and placed her in handcuffs. Prior to this, she had her back to Officer Graceffa, was unaware of him behind her, and did not hear his command to stop. She avers that once she became aware that officers were attempting to engage with her, she immediately complied.

¶ 28            Defendant draws our attention to two cases: *People v. Ostrowski*, 394 Ill. App. 3d 82 (2009), and *Borders*. In *Ostrowski*, the defendant was convicted of resisting arrest after police officers attempted to apprehend him at an outdoor festival. *Id.* at 83. The defendant, who was intoxicated, was told he was under arrest. *Id.* at 89. The defendant then struggled with officers for approximately three to four minutes before being subdued. *Id.* at 88. On appeal, the defendant

argued that he did not knowingly impede the officers from arresting him. *Id.* at 97-98. The appellate court disagreed. *Id.* at 98. The court found that because the defendant was approached from behind and heavily intoxicated, it likely took him a minute or two to realize what was happening. *Id.* However, after being told he was being arrested, the defendant continued to fight officers for an additional few minutes. *Id.* at 99. The court found this sufficient to conclude that the defendant knowingly impeded the officers' attempts to arrest him, even if only for a short period of time. *Id.*

¶ 29    In *Borders*, police officers responded to a 911 call at the defendant's home placed by his sister. *Borders*, 2020 IL App (2d) 180324, ¶¶ 4, 8. When the officers arrived, they spoke with the defendant's sister, who appeared calm and asserted that the problem had been "removed." *Id.* ¶¶ 5, 8. Eventually, at his sister's call, the defendant came down to the front door. *Id.* ¶ 8. One of the officers asked him if he would like to step onto the porch. *Id.* ¶ 12. Although defendant was not wearing shoes, he did so. *Id.* He told police that he had been asleep and did not know what was going on. *Id.* At this point, the police were notified that the defendant's sister had again called 911 and asked the police to leave. *Id.* ¶ 13. The defendant asked if he could go inside to get socks and shoes. *Id.* ¶ 14. He moved to go inside, and one of the officers put his hand on the defendant's arm to stop him, stating he wanted the defendant to stay outside. *Id.* The defendant tried to pull his arm away and again asked if he could go inside to get shoes and socks. *Id.* ¶ 15. One of the officers stated they were done playing games and moved toward the defendant. *Id.* Two officers forced the defendant to the ground, yelling at him to put his hands behind his back. *Id.* In less than a minute, the defendant was handcuffed. *Id.* He was not told he was under arrest before being grabbed. *Id.* ¶ 20. He was later convicted on two counts of resisting a peace officer's performance of authorized acts. *Id.* ¶ 27.

¶ 30 The appellate court reversed both counts. The court noted that the defendant was never told he was under arrest and stated, "One cannot knowingly resist an arrest until one knows that it is occurring." *Id.* ¶ 54. It further found that although the defendant was seized by uniformed police officers, which the State argued should have informed him he was under arrest, the defendant had just woken up, did not have any reason to believe he was under arrest, and was cooperating with police when he was suddenly forced to the ground from behind. *Id.* ¶ 59. The court concluded that, given the facts of the situation, it would have taken a reasonable person the entirety of the interaction to realize what was happening. *Id.* As a result, the court found the evidence insufficient to show the defendant knowingly resisted arrest. *Id.*

¶ 31 Defendant here argues that, unlike the defendant in *Ostrowski* and like the defendant in *Borders*, she was not informed that she was under arrest until after she had been apprehended and, therefore, could not be said to have knowingly resisted the arrest before that time. In contrast, the State argues that because Officer Graceffa was wearing a police uniform and driving a marked squad car, defendant had knowledge of the presence of a peace officer. The State adds that defendant's claims that she was unaware of Officer Graceffa's presence and did not hear him call to her are disproven by the squad car footage, which showed her changing direction to run away from Officer Graceffa's car.

¶ 32 In viewing the evidence in the light most favorable to the State, we find the evidence sufficient to prove that defendant was aware of Graceffa's presence and intent to apprehend her. The evidence demonstrated the following facts: (1) Officer Graceffa was dressed in a uniform identifying him as a police officer, (2) he was driving a marked squad car, (3) he and defendant were the only two people present in the alley, (4) he drove his car within feet of defendant before exiting, (5) he activated the lights on his car, and they could be seen reflected in windows in front

of defendant, (6) he yelled for defendant to stop by name, (7) defendant continued to run in the opposite direction of Officer Graceffa, and (8) when defendant was confronted with a second police car at the end of the alley and again ordered to get down, she pivoted around the car and, rather than stopping, continued running to the right, out of the alley. These facts allow a rational trier of fact to conclude that defendant knew a police officer was attempting to apprehend her.

¶ 33        Further, defendant's testimony harmed her credibility regarding her version of events. She testified that she was compliant with officers after becoming aware of their intent to engage with her, but the video from Graceffa's squad car showed her struggling with officers and yelling profanities after being handcuffed. The jury might have concluded that defendant was also less than truthful about her lack of awareness of Officer Graceffa and his command to stop, especially considering that defendant continued to run from officers after coming face-to-face with Officer Stien, whom she undoubtedly saw and heard. Moreover, although defendant was not told she was under arrest until she was apprehended and the footage shows her asking what she is under arrest for, the test in this situation is not what a defendant actually thought but what a reasonable person would have thought in the defendant's shoes. *Id.* ¶ 56. We find that the evidence, when viewed in the light most favorable to the State, sufficient to allow a fact finder to infer that defendant was aware of Officer Graceffa's presence and to further conclude that she knowingly resisted his attempt at an authorized act of arrest.

¶ 34                  2. *Material Impediment*

¶ 35        Defendant next argues that the evidence she materially impeded Officer Graceffa's authorized act was insufficient, as her conduct constituted mere "token resistance or brief delay."

¶ 36        We have previously held that section 31-1(a) of the Code contains an implicit requirement that the obstruction or resistance committed by a defendant must materially impede

an officer's performance of an authorized act. See *People v. Gotschall*, 2022 IL App (4th) 210256, ¶ 26; see also *People v. Tomlinson*, 2025 IL App (4th) 240510-U, ¶ 41. While the length of any delay caused by a defendant's resistance is one factor to be considered in determining whether her resistance constituted a material impediment, it is not the only factor to be considered. *People v. Mehta*, 2020 IL App (3d) 180020, ¶ 32. For example, "a defendant's conduct may be found to materially impede an authorized act of a peace officer, even if it causes only a brief delay, if it threatens officer safety." *Gotschall*, 2022 IL App (4th) 210256, ¶ 30.

¶ 37 Defendant discusses *People v. Sadder-Bey*, 2023 IL App (1st) 190027. There, the court found no material impediment where the defendant briefly quarreled with officers after he was pulled over but then ultimately complied with their requests to get out of his vehicle. *Id.* ¶ 49. In reaching this holding, the court noted that less than two minutes elapsed from when the defendant was asked to get out of his car to when he complied with the request. *Id.*

¶ 38 Defendant attempts to craft a similar argument here. Specifically, she argues that because less than 30 seconds elapsed between the time Officer Graceffa ordered her to stop and the time she was placed in handcuffs, any resistance on her part was not material. The State argues that defendant's resistance was material because it threatened officer safety and frustrated the officer's ability to effectuate an arrest "without an equal response of force in a [multi]-officer foot pursuit."

¶ 39 We agree with the State. To begin, while defendant's resistance may have been relatively short-lived, this does not definitively establish her resistance was not material. See *Gotschall*, 2022 IL App (4th) 210256, ¶ 30. Further, any conduct that threatens an officer's safety or places an officer in fear for his safety is a significant impediment to the officer's performance of his duties, regardless of how brief the conduct's duration. *People v. Shenault*, 2014 IL App (2d)

130211, ¶ 18. Here, Officer Graceffa testified that the encounter with defendant was escalated by numerous factors, one of which was her apparent decision to flee. According to Officer Graceffa, when a suspect flees, it creates the fear that she will run into another person's house, another public building, or traffic. As a result, defendant's act of running from Graceffa created possible danger for herself, Graceffa, and other individuals. For that reason, we find the evidence sufficient for a reasonable person to conclude that defendant's fleeing from Officer Graceffa materially impeded his performance of an authorized act. See *Shenault*, 2014 IL App (2d) 130211, ¶ 22 (finding a material obstruction where the defendant's conduct put an officer in danger, despite the fact that the officer was able to apprehend her almost immediately).

¶ 40    3. *Underlying Offense for Which Defendant Was Subject to Arrest*

¶ 41    Defendant next argues the State failed to prove beyond a reasonable doubt that she was subject to arrest due to a predicate offense and, as a result, failed to prove her guilty of resisting arrest. She notes that neither Officer Graceffa nor Officer Stien testified as to the contents of the warrant they were executing, what defendant's underlying offense was, or if it was a criminal offense. Nor did the trial court take judicial notice of the warrant or have it admitted into evidence. She argues we must therefore reverse her conviction.

¶ 42    Defendant's argument is premised on the following language contained in subsection (d) of section 31-1 of the Code (720 ILCS 5/31-1(d) (West 2024)): "A person shall not be subject to arrest for resisting arrest under this Section unless there is an underlying offense for which the person was initially subject to arrest." She maintains that this recently added language creates an additional element of the offense of resisting arrest that the State is required to prove. At oral argument, counsel for defendant elaborated on this position, stating that although evidence was presented at trial by both Officer Stien and Officer Graceffa that they were executing a warrant

for defendant's arrest, this was insufficient. Counsel asserted that, pursuant to subsection (d), a prosecutor must present evidence that an underlying arrest warrant was legitimate in order to prove the crime of resisting arrest.

¶ 43    As will be discussed below, we find that subsection (d) does not apply to the instant case, and, therefore, we need not determine its precise meaning here. We write only to note our disagreement with counsel's interpretation. Consider the following hypothetical: a warrant is issued, and a police officer attempts to execute it. While making the attempt, a suspect indisputably resists arrest, perhaps going as far as to engage in a physical struggle with the officer. Eventually, the suspect is apprehended. Later, it is revealed that the warrant lacked a legitimate basis for its issuance. Under counsel's interpretation of subsection (d), the suspect has not committed the offense of resisting arrest, despite engaging in a physical struggle with an officer attempting to serve a warrant, because the State will not be able to prove the legitimacy of the underlying warrant at trial.

¶ 44    As stated, we do not seek now to divine what the legislature intended in drafting subsection (d), as we find it does not apply in the instant case. We will limit our analysis to the simple assertion that, whatever the legislature intended, it cannot have been the interpretation proposed by defense counsel.

¶ 45    We will now discuss the applicability of subsection (d) to the instant case. Although this issue was not raised by either of the parties, we note that, at the time defendant was charged in 2021, subsection (d) was not part of section 31-1. See 720 ILCS 5/31-1 (West 2020). Public Act 101-652, § 10-215 (eff. Jan. 1, 2023) amended section 31-1 to include subsection (d), with the amendment going into effect on January 1, 2023. To state the obvious, this effective date is almost two years after the events that gave rise to defendant's charge. Yet, without explanation, both

parties retroactively apply the 2024 version of section 31-1 to defendant's case. We acknowledge that on August 19, 2024, the State was given leave to file a new information *instanter*, which superseded the prior 2021 complaint in this case. However, the governing version of the statute is the one that was in effect at the time defendant committed the offense, not the version in effect at the time the information was filed. See *People v. Gulley*, 162 Ill. App. 3d 545, 549 (1987) (holding a statutory amendment did not apply to the defendant's offense, which was committed before the active date of the amendment).

¶ 46　　　　We must therefore determine if the parties were correct in retroactively applying the 2024 version of the statute. In addressing the issue of retroactivity, our supreme court has adopted a modified version of the analysis set forth in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *People v. Hunter*, 2017 IL 121306, ¶ 20. Under our modified analysis, we first ask if the legislature clearly indicated a statute's temporal reach, *i.e.*, we ask if the legislature clearly indicated the statute was to be applied retroactively. *Id.* If it did, we will give effect to the legislature's intent, as long as there is no constitutional prohibition. *Id.* However, if the legislature's intent is not clear, section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2024)) then controls our analysis. *Hunter*, 2017 IL 121306, ¶ 21. Section 4 is a " 'general savings clause, which [the supreme] court has interpreted as meaning that procedural changes to statutes will be applied retroactively, while substantive changes are prospective only.' " *Id.* ¶ 22 (quoting *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 20). Whether statutory amendments apply retroactively is an issue of statutory construction that we review *de novo*. *Id.* ¶ 15.

¶ 47　　　　We find *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, instructive. There, the defendants were charged with operating a solid waste disposal site without a permit, in violation of the Environmental Protection Act (Protection Act) (415 ILCS 5/1 *et seq.* (West 2000)).

*Madigan*, 2015 IL 117193, ¶ 1. During the period they operated the site, from 1995 until 2003, section 42(e) of the Protection Act (415 ILCS 5/42(e) (West 2000)) did not allow for injunctive relief. *Madigan*, 2015 IL 117193, ¶ 25. However, in 2004, after the initial complaint was brought, this section was amended to permit mandatory injunctive relief. *Id.* ¶ 27. The State sought injunctive relief under the amended version of the Protection Act, which the trial court granted. *Id.* ¶ 19. The defendants appealed, arguing that the trial court erred in retroactively applying the amended section. *Id.*

¶ 48 The supreme court addressed the issue of whether the legislature intended the amended version of section 42(e) to apply retroactively or prospectively. *Id.* ¶ 27. It concluded that the legislature did not express a clear intent for the amendment to apply prospectively or retroactively, and, therefore, under section 4 of the Statute on Statutes, because the statute was substantive, it would be applied only prospectively. *Id.* ¶ 36. In determining the legislature's intent, the court specifically limited its focus on the text of the statute itself, stating:

"When applying the first step of the *Landgraf* analysis to assess the temporal reach of a statutory amendment, it is not proper to look to the entire statute for legislative intent. Under the first step of *Landgraf*, we are to determine whether the text of the amended provisions, itself, clearly express the legislature's intent that the amendment be given either prospective or retrospective application." *Id.* ¶ 34.

¶ 49 Here, an amendment to section 31-1 was passed by the legislature in 2021 and went into effect on January 1, 2023. Although its effective date was delayed, nothing in the text of the amended statute itself indicated its temporal reach. See 720 ILCS 5/31-1 (West 2024). We must therefore proceed to the next step in the analysis and determine if the amendment is procedural or

substantive in order to determine its possible retroactive application.

¶ 50 Our analysis on this point need not be lengthy. "A procedural change in the law prescribes the method of enforcing rights or obtaining redress; it embraces pleading, evidence and practice. [Citation.] In contrast, a substantive change in the law establishes, creates, or defines rights." *People v. Scott*, 2017 IL App (4th) 150761, ¶ 15. Where, as here, an amendment to a statute alters the culpability of certain individuals, it is substantive in nature. *People v. Atkins*, 217 Ill. 2d 66, 72 (2005) ("Substantive amendments include those that alter the scope or the elements of the crime.").

¶ 51 Because we determine that the changes to section 31-1 of the Code by Public Act 101-652 are substantive in nature, we conclude that they do not apply retroactively. See *Hunter*, 2017 IL 121306, ¶ 22. We therefore need not address subsection (d) further, as this subsection was not part of the statute as it existed at the time of defendant's offense.

¶ 52                                      B. Jury Instructions

¶ 53 Defendant argues the trial court erred in omitting two essential elements from the jury instructions. Specifically, she contends that the instructions provided to the jury should have required it to find that (1) there was an underlying offense for which she was subject to arrest, pursuant to subsection (d) of section 31-1 of the Code and (2) defendant acted in a way that materially opposed an officer's attempt to perform an authorized act. Defendant did not object at trial to the jury instructions given, nor did she raise the issue in a posttrial motion, but she urges us nevertheless to review the issue as either first or second prong plain error.

¶ 54 The State, in turn, argues that defendant cannot challenge the jury instructions because she invited any error by agreeing to the instructions that would be offered. It further contends that even if we do not find defendant invited error, defendant has also failed to establish

plain error.

¶ 55    "[T]he purpose of jury instructions is to provide the jury with correct legal principles that apply to the evidence, thus enabling the jury to reach a proper conclusion based on the applicable law and the evidence presented." *People v. Parker*, 223 Ill. 2d 494, 500 (2006). "In a criminal case, fundamental fairness requires that the trial court fully and properly instruct the jury on the elements of the offense, the burden of proof, and the presumption of innocence." *People v. Pierce*, 226 Ill. 2d 470, 475 (2007). When an IPI applies, it shall be used unless the court determines that it does not accurately state the law. Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013). When determining whether the jury instructions accurately conveyed the law applicable to the case, our review is *de novo*. *Pierce*, 226 Ill. 2d at 475. A court must ask if the instructions, taken as a whole, "fairly, fully, and comprehensively apprised the jury of the relevant legal principles." *Parker*, 223 Ill. 2d at 501.

¶ 56    We need not determine if defendant invited error by acquiescing in the jury instructions, making her ineligible for plain error review, because we conclude that, even under plain error review, defendant has failed to show any error was committed. See *People v. Durr*, 215 Ill. 2d 283, 300 (2005) (stating the first step in a plain error analysis is to determine if an error occurred).

¶ 57    An omitted jury instruction constitutes plain error only when the omission creates a serious risk that the defendant was incorrectly convicted based on the jury's misunderstanding of the law. *People v. Hopp*, 209 Ill. 2d 1, 12 (2004). As previously stated, where the IPI contains an applicable instruction in a criminal case, it shall be given unless the court determines it does not accurately state the law. *Id.* at 7. Our supreme court has stated that "Illinois pattern instructions have been painstakingly drafted *** so as to clearly and concisely state the law." (Internal

quotation marks omitted.) *Durr*, 215 Ill. 2d at 301. Therefore, "[t]rial judges should not take it upon themselves to second-guess the drafting committee where the instruction in question clearly applies." *Id.*

¶ 58    Here, the State tendered two jury instructions defining the offense of resisting a peace officer that featured identical language to that found in IPI Criminal No. 22.14. The trial court instructed the jury, in relevant part, as follows:

> "To sustain the charge of resisting or obstructing a peace officer, the State must prove the following propositions. First proposition, that Justin Graceffa was a peace officer. And the second proposition, that the defendant knew Justin Graceffa was a peace officer. And the third proposition, that the defendant knowingly resist[ed] or obstructed the performance by Justin Graceffa of an authorized act within his official capacity."

¶ 59    These instructions mirrored those found in IPI Criminal No. 22.14 and were merely tailored to insert the terms "peace officer" and Officer's Graceffa's name. As stated, the court was required to use the IPI instruction where applicable, absent a finding that the instruction did not accurately convey the law. The question before us, then, is whether IPI Criminal No. 22.14 accurately conveyed the offense of resisting a peace officer or whether, as defendant argues, it did not accurately convey the law by virtue of omitting the requirements that the jury find (1) defendant committed an underlying offense that would subject her to arrest and (2) defendant's conduct posed a material impediment to Graceffa's authorized act.

¶ 60    We find the analysis of these issues to be simple. Defendant's first argument—that the jury should have been instructed that the State had to prove she was subject to an underlying arrest pursuant to section 31-1(d) of the Code—holds no merit. As previously discussed, defendant

was not charged under the version of the statute containing subsection (d). Therefore, the failure to include this requirement in the jury instructions cannot be said to have inaccurately conveyed the law.

¶ 61 Defendant's second argument—that the jury should have been instructed on a "materiality" requirement—is equally unavailing. We have previously addressed this precise issue in *Tomlinson*, 2025 IL App (4th) 240510-U. In *Tomlinson*, the defendant was charged with, among other things, resisting a peace officer. *Id.* ¶ 4. At trial, defense counsel objected to giving the jury IPI Criminal No. 22.14, arguing that, based on prior case law, the State was required to prove defendant's conduct was a material impediment to sustain a charge of resisting a peace officer. *Id.* ¶ 32. Counsel proposed a non-IPI instruction that contained all the language of IPI Criminal No. 22.14 but added a fourth proposition, requiring the jury to find that the defendant's conduct materially impeded an authorized act of a peace officer. *Id.* The trial court declined defense counsel's suggested instruction, finding that IPI Criminal No. 22.14 still accurately stated the law. *Id.* ¶ 33. IPI Criminal No. 22.14 was given to the jury, and the defendant was ultimately convicted of resisting a peace officer. *Id.* ¶¶ 33, 35.

¶ 62 The defendant appealed, arguing, as defendant in the instant case does, that the jury should have been instructed that the State was required to prove beyond a reasonable doubt that her conduct materially impeded the officer's execution of her official duties. *Id.* ¶ 51. We disagreed, finding that IPI Criminal No. 22.14 accurately conveyed the elements of resisting a peace officer that were set forth in section 31-1(a) of the Code. *Id.* ¶ 54. In doing so, we rejected the idea that the "material impediment" requirement recognized in our cases constituted a "new law" that would require adding a separate instruction to IPI Criminal No. 22.14. *Id.* ¶ 55.

¶ 63 Defendant insists that *Tomlinson* was decided incorrectly because our

determination in that case "suggests that only *some* elements require submission to the jury." (Emphasis in original.) In support of her argument that materiality is an essential element of resisting a peace officer, defendant cites *People v. Gaudin*, 515 U.S. 506 (1995). In *Gaudin*, the respondent was charged with making false statements on federal loan documents. *Id.* at 508. The trial court instructed the jury that, in order to find the respondent guilty, it was required to find that the alleged false statements were material to the activities and decisions of the relevant federal agency. *Id.* The court further instructed that this issue of materiality was not for the jury's consideration but was a decision for the court. *Id.* The court stated, " 'You are instructed that the statements charged in the indictment are material statements.' " *Id.* The respondent was convicted. *Id.* at 509.

¶ 64       On appeal, the respondent's convictions were reversed by the Ninth Circuit Court of Appeals, which held that materiality in this instance was a question for the jury. *Id.* The United States Supreme Court granted *certiorari*. *Id.* Noting that it was uncontested that the false statements at issue must be "material" and that "materiality" was an element of the offense the government must prove, the Court concluded that because materiality was an element of the offense, the respondent had a right to have the jury decide the issue of materiality. *Id.* at 511.

¶ 65       We find *Gaudin* inapplicable for two reasons. First, *Gaudin* concerned a different offense and statute than those at issue in the instant case. Second, the issue before the *Gaudin* court was not whether materiality comprised an essential element of the crime on which the jury must be instructed, as it is in the instant case. The issue before the *Gaudin* court was whether, when materiality is an *uncontested* element of the crime, the question should be decided by the jury or the judge. See *id.* at 523. In other words, *Gaudin* asked if the jury's role was limited purely to determining the factual components of the essential elements of a crime or if it also extended to

mixed questions of law and fact. *Id.* at 512-14. Therefore, contrary to defendant's argument, *Gaudin* does not provide support for her assertion that materiality is an essential element of the offense of resisting a peace officer under section 31-1(a) of the Code that requires a separate jury instruction.

¶ 66 Further, while the parties discuss *Tomlinson*, which concerned the offense of resisting a peace officer under section 31-1 of the Code, we also find applicable our decision in *People v. Coates*, 2025 IL App (4th) 231312, which concerned the offense of obstructing a peace officer under section 31-1. There, the defendant argued on appeal that his conviction for obstructing a peace officer must be reversed, as the jury was not instructed that the State was required to prove the defendant's obstructive conduct presented a material impediment. *Id.* ¶ 47. The jury instructions presented in *Coates*, like those in the instant case, were taken from IPI Criminal No. 22.14. See *id.* ¶ 52. We disagreed with the defendant, finding that while the State was required to show his conduct constituted a material impediment to the performance of an officer's duties, materiality was not a unique element of the offense requiring a separate instruction. *Id.* Instead, we noted, "[T]he requirement of materiality is merely definitional; it is based on Illinois courts' statutory interpretation of the meaning of the word 'obstruct.' " *Id.*

¶ 67 Though *Coates* addressed the crime of obstructing a peace officer under section 31-1, and not the crime of resisting, we find the offenses similar enough to take instruction from *Coates*. Both offenses require the State to prove materiality, the offenses share the same language in section 31-1, and IPI Criminal No. 22.14 applies to both and merely requires a court to switch out the terms "obstruct" and "resist" based on their applicability in a specific case. Further, courts have relied on the materiality component of the crime of obstructing a peace officer in order to find the same requirement present in the offense of resisting a peace officer. See *Sadder-Bey*, 2023

IL App (1st) 190027, ¶¶ 37-40. As a result, we find the reasoning employed in *Coates* equally applicable to the instant case. Materiality is not a separate element of the offense, but a definition of "resist" based on courts' statutory interpretation. As such, it did not require a separate instruction.

¶ 68        Defendant has offered us no compelling reasons to depart from our precedent in *Tomlinson* or *Coates*. We therefore conclude that IPI Criminal No. 22.14 accurately conveys the law as it appeared in section 31-1(a) at the time defendant was charged, and materiality is not an essential element of the crime of resisting a peace officer such that the jury should have been instructed on it. Therefore, defendant has failed to show plain error.

¶ 69                                III. CONCLUSION

¶ 70        For the reasons stated, we affirm the trial court's judgment.

¶ 71        Affirmed.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 21-CM-1698; the Hon. Scott Paccagnini, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Santiago A. Durango, and Daniella Gonzalez, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | J. Hanley, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, and Victoria E. Jozef, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |